No. 96-207

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997



STATE OF MONTANA,

Plaintiff and Respondent,

v.

RICHARD ARNOLD SAVARIA,

Defendant and Appellant.



APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Ed McLean, Judge presiding.



COUNSEL OF RECORD:

For Appellant:

William F. Hooks, Appellate Defender,
Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General;
Jennifer Anders, Assistant Attorney General;
Helena, Montana

Robert L. "Dusty" Deschamps III, Missoula
County Attorney; Missoula, Montana



Submitted on Briefs: March 6, 1997

Decided: August 19, 1997
Filed:


_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

On November 7, 1994, Richard Arnold Savaria was sentenced by the Fourth Judicial District Court, Missoula County, to a term of ten years in the Montana State Prison for each of the charged seven counts of felony theft. Savaria appealed. This Court affirmed his conviction, but reversed the District Court's sentence and remanded the case to the District Court for resentencing pursuant to    46-18-201(10) and -225, MCA. State v. Savaria (1995), 274 Mont. 197, 906 P.2d 215. On remand for resentencing, the District Court ordered that Savaria be committed to the Department of Corrections for a term of ten years on Count I.  The District Court further sentenced Savaria to a term of ten years in the Montana State Prison on each of the remaining six counts, with the sentence on these counts suspended subject to certain terms and conditions. The sentences are to be served consecutively.  Savaria appeals from this judgment.  Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

The issues on appeal are:

1.   Did the District Court err in treating the "Affidavit--In Support of Motion to Vacate Set Aside Sentence" as a petition for post-conviction relief, and in entering an order on that basis?

2.   Did the District Court deny Savaria his constitutional right to the assistance of counsel on direct appeal?

3.   Did the District Court err in imposing consecutive sentences in violation of the protection against multiple punishments afforded by state and federal constitutional provisions?

4.   Did the District Court lack statutory authority to "reserve" the right to attach conditions to Savaria's suspended sentence?

FACTUAL BACKGROUND

On June 30, 1994, Savaria was charged by information filed in the Fourth Judicial District Court, Missoula County, with seven counts of felony theft pursuant to   45-6-301(2)(a), MCA.  The alleged offenses arose from Savaria's issuance of checks to retail merchants on a nonexistent checking account during a five-day period in April 1994.  The information provided:

COUNT I

On or about April 19, 1994, the above-named Defendant [Savaria] purposely or knowingly obtained by deception control over property, jewelry property of Gold Rush Jewelry in Southgate Mall, with the

purpose to deprive the owner of the property. The value of the property is in excess of $500.

COUNT II

On or about April 19, 1994, the above-named Defendant purposely or knowingly obtained by deception control over property, clothing and stereo property of Sears in Southgate Mall, with the purpose to deprive the owner of the property. The value of the property is in excess of $500 and the theft was part of a common scheme.

COUNT III

On or about April 18 and 19, 1994, the above-named Defendant purposely or knowingly obtained by deception control over property, food and other items property of Costco, with the purpose to deprive the owner of the property. The value of the property is in excess of $500 and the theft was part of a common scheme.

COUNT IV

On or about April 16 to 18, 1994, the above-named Defendant purposely or knowingly obtained by deception control over property, jewelry, watches and sports equipment property of Bob Wards, with the purpose to deprive the owner of the property. The value of the property is in excess of $500 and the theft was part of a common scheme.

COUNT V

On or about April 18, 1994, the above-named Defendant purposely or knowingly obtained by deception control over property, cassette player, tuner, speakers and other stereo equipment, property of Stereo Plus, with the purpose to deprive the owner of the property. The value of the property is in excess of $500 and the theft was part of a common scheme.

COUNT VI

On or about April 16 and 18, 1994, the above-named Defendant purposely or knowingly obtained by deception control over property, automobile parts, property of Champion Auto, with the purpose to deprive the owner of the property. The value of the property is in excess of $500 and the theft was part of a common scheme.

COUNT VII

On or about April 15 through 19, 1994, the above-named Defendant purposely or knowingly obtained by deception control over property, clothing and other property of Maurice's, the Altogether, Traditions, Western Sportsman, and Western Outfitters in Southgate Mall; shoes, clothing, purse and backpack, property of Ogg Shoes on North Higgins and Southgate Mall; and household items, property of Ace Hardware and Ernst with the purpose to deprive the owner of the property. The value of the property is in excess of $500 and the theft was part of a common

scheme.

On August 10, 1994, Savaria entered a plea of guilty to all seven charges of felony
theft as alleged in the information.  Prior to sentencing, Savaria's counsel filed a
sentencing memorandum in which she argued that the prosecutor divided the checks
arbitrarily in the information and charged Savaria with seven counts of common scheme
when only one common scheme actually occurred.  Savaria's counsel stated that she did
not object to this action at the plea hearing because she believed the District
Court would
rule that it was a matter of prosecutorial discretion and that the common scheme
issue
should more appropriately be addressed at sentencing since Savaria pled guilty to all
seven counts.  In the memorandum, Savaria's counsel urged the court to impose seven
concurrent sentences, rather than seven consecutive sentences.

The District Court sentenced Savaria to ten years at the Montana State Prison on
each count, and ordered that the sentences run consecutively.  The court's judgment
suspended the sentences imposed on Counts II through VII upon certain conditions,
including the requirement that Savaria pay a total of $16,976.20 in restitution.
Savaria
appealed this judgment, challenging the failure of the District Court to state why
alternatives to imprisonment were not selected pursuant to  46-18-201(10), MCA.  The
State filed a notice of concession, and this Court affirmed Savaria's conviction and
remanded for resentencing.  Savaria, 274 Mont. 197, 906 P.2d 215.

On January 24, 1996, Savaria was resentenced by the District Court.  At the
sentencing hearing, Savaria's counsel deferred to Savaria who argued that the thefts
were
committed as part of one common scheme and, therefore, he should not be sentenced on
each charge.  Savaria argued that if the District Court sentenced him on each count
individually with the sentences to run consecutively, it would constitute multiple
punishments in violation of the prohibition against double jeopardy.

The District Court rejected Savaria's argument, stating that each count was
itself
a felony theft, as the property taken in each count exceeded $500.  The District
Court
stated:
Let's ignore the common scheme.  If you steal property in Montana that is
valued at over five hundred dollars, it is a felony.  That is the definition of
felony theft, and the State has alleged that in each of these counts.

It has also alleged common scheme, which would make it a felony.  Either
one of those would make it a felony if they were charged in the alternative.

I agree with you that if you were being sentenced under the common
scheme of things, that all sentences should run concurrent.

The court then sentenced Savaria to a term of ten years with the Department of
Corrections on Count I, and to terms of ten years imprisonment in the Montana State
Prison each on Counts II through VII, to run consecutively to each other and to the
term
in Count I.  The terms were suspended on a number of conditions.

On February 13, 1996, Savaria filed a pro se document entitled "Affidavit--In

Support of Motion to Vacate Set Aside Sentence" in which he again presented his double jeopardy argument. Savaria specifically requested that the court resentence him "to no more than the maximum sentence allowed by law under the charge of theft as specified in Section 45-6-301 M.C.A. of which is ten (10) years; for one common scheme." The State responded to this document by stating that it was not an affidavit, but should be treated as a petition for post-conviction relief, as it viewed this to be Savaria's only avenue for relief. The State asked the District Court to treat the document as a petition for post-conviction relief and asked the court to dismiss it for failure to state a claim for relief.

On April 8, 1996, the District Court issued an order in response to Savaria's affidavit, noting that Savaria's notice of appeal filed on March 15, 1996, divested the court of jurisdiction to rule on any pending motions. The court concluded, however, that it had jurisdiction to entertain a petition for post-conviction relief, as it was a civil proceeding independent of the underlying criminal matter. The District Court then denied Savaria's petition for post-conviction relief. Savaria appeals.

ISSUE 1

Did the District Court err in treating the "Affidavit--In Support of Motion to Vacate Set Aside Sentence" as a petition for post-conviction relief, and in entering an order on that basis?

Savaria raises this issue in an effort to have this Court treat this matter as a direct appeal of his sentence, rather than an appeal from the denial of his petition for post-conviction relief. The State submits it is willing to concede that the present appeal should be considered a direct appeal of his sentence, rather than an appeal from a denial of his post-conviction petition. Therefore, we do not need to further address this issue.

ISSUE 2

Did the District Court deny Savaria his constitutional right to the assistance of counsel on direct appeal?

Savaria argues that the District Court did not adequately protect his Sixth Amendment right to appellate counsel when it referred the matter to the Missoula Public Defender to determine whether any appealable issues existed. Savaria is currently represented by the Appellate Defender, making this issue moot. We therefore decline to address this issue.

ISSUE 3

Did the District Court err in imposing consecutive sentences in violation of the

protection against multiple punishments afforded by state and federal constitutional provisions?

The constitutional prohibition against double jeopardy is found in the Fifth Amendment and is made applicable to the states through the Fourteenth Amendment. Article II, Section 25, of the Montana Constitution, provides the same protection. The provision against double jeopardy protects defendants from both multiple punishments imposed at a single prosecution for the same offense, and for multiple prosecutions for offenses arising out of the same transaction. State v. Palmer (1983), 207 Mont. 152, 158, 673 P.2d 1234, 1237. This Court has consistently applied the tests set forth in Blockburger v. United States (1932), 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306, when examining issues of double jeopardy.

Blockburger addresses the two situations in which double jeopardy violations may occur. The first test enunciated in Blockburger is known as the "elements test" and provides that:

A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.

Blockburger, 284 U.S. at 304, 52 S. Ct. at 182. The second test set forth in Blockburger dealt with the issue of multiple violations of the same statutory provision:

Each of several successive sales constitute a distinct offense, however closely they may follow each other . . . when the impulse is single, but one indictment lies, no matter how long the action may continue. If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie.

Blockburger, 284 U.S. at 302, 52 S. Ct. at 181.

The second Blockburger test dealing with multiple violations of the same statutory provision is the test which Savaria contends applies to his conviction and sentencing. Savaria argues that the court erred when it imposed multiple punishments because he committed only one violation of the statutory provision for felony theft, a common scheme. He argues that he engaged in only one common scheme. The State asserts that each incident of theft constituted a separate and unique common scheme and, therefore, the District Court properly sentenced Savaria for multiple violations of the same statutory provision.

In State v. Crowder (1991), 248 Mont. 169, 810 P.2d 299, this Court addressed the issue of multiple violations of the same statutory offense. In Crowder, the defendant was charged with two violations of "possession of dangerous drugs." This Court was presented with the question of whether Crowder's possession of drugs on his person and possession of drugs on his property constituted two separate acts of possession. In that

case, Crowder asserted that the principles of fundamental fairness required that he be charged only once for conduct which amounted to the same transaction. In Crowder, we looked to the second test set forth in Blockburger and upheld the conviction. We stated that in order to determine the "allowable unit of prosecution" courts must look to the legislative intent since discretion is with the Legislature to impose punishments subject only to constitutional limitations. Crowder, 810 P.2d at 305. We held that the Legislature intended to punish each separate possession of dangerous drugs and concluded that the district court did not err in failing to join the separate counts of possession on the person and possession on the premises.

In Stilson v. State (1996), 278 Mont. 20, 924 P.2d 238, we applied the determination of allowable unit of prosecution to the question of whether the Legislature intended that a defendant could be punished for more than one common scheme. In Stilson, the defendant was charged under the same statute of issuing a bad check, a felony, common scheme, in three separate cases in three counties and was convicted in each case of that offense. We concluded that, under the facts, the multiple punishments were not barred by double jeopardy protections, even though there was no express legislative intent:

> While we agree with Stilson that the Code does not provide for multiple common schemes, we conclude that neither has the legislature foreclosed such a possibility. Under the appropriate facts and circumstances, we conclude that double jeopardy protections do not necessarily prevent a defendant who has been convicted of a common scheme in one county from being convicted of another common scheme in a different county.

Stilson, 924 P.2d at 241. We further explained that the "evidence required for the State to prove the offense in each county was different and specific to each county and the series of acts or transactions in each county were different from those in the other jurisdictions." Stilson, 924 P.2d at 241.

A prosecutor's supervision of criminal actions is complete and is "limited only by such restrictions as the law imposes." State ex rel. Fletcher v. District Court (1993), 260 Mont. 410, 414, 859 P.2d 992, 995. When the facts support a possible charge of more than one crime, the crime to be charged is a matter of prosecutorial discretion. State v. Smaage (1996), 276 Mont. 94, 98, 915 P.2d 192, 194-95; Fletcher, 859 P.2d at 995.

Common scheme is defined by 45-2-101(7), MCA, as "a series of acts or omissions motivated by a purpose to accomplish a single criminal objective or by a common purpose or plan that results in the repeated commission of the same offense or that affects the same person or the same persons or the property of the same person or persons." Here, the prosecutor exercised her discretion by charging Savaria with

individual common schemes.  These common schemes are each supported by separate and distinct evidence. Counts II through VI of the information were individual common schemes, as they each consisted of a series of acts, motivated by a common purpose or plan, that affected the property of the same person or persons.  Each count was specifically related to the acts which occurred in the individual stores set forth in each of
these charges.  The prosecutor had the discretion to charge each of these counts as individual felony theft, a common scheme.  The prosecutor could have also charged these
counts as felony theft under  45-6-301(8), MCA, without charging common scheme. This subsection provides: "Amounts involved in thefts committed pursuant to a common scheme or the same transaction, whether from the same person or several persons, may be aggregated in determining the value of the property." Section 45-6-301(8), MCA (emphasis added).  The amounts involved in each count could have been aggregated if they were involved in the same transaction and charged as individual counts of felony theft; however, the prosecutor chose to exercise her discretion by charging Counts II through VI each as a felony theft, a common scheme.  This does not violate the provision
against double jeopardy because each count was an individual common scheme dependent on different evidence specific to each store.

Count VII of the information grouped the thefts from several stores into one charge of felony theft, a common scheme.  Again, the prosecutor was within her discretion to charge in this manner.  The acts committed by Savaria in this count were
committed with a common purpose or plan and resulted in the repeated commission of the same offense.  The evidence required to prove this charge is separate and distinct
from the evidence required to prove the other charges.

The prosecutor had the discretion to charge separate common schemes, as she did, and was not limited by any restrictions within the law to only charge all the offenses
committed as being a part of a single common scheme.  The District Court, therefore, did not err in imposing consecutive sentences on the separate charges because they were
not in violation of the protections afforded by the Montana and the United States Constitutions against multiple punishments.

ISSUE 4

Did the District Court lack statutory authority to "reserve" the right to attach conditions to Savaria's suspended sentence?

The District Court, in its sentencing order, stated that it retains jurisdiction and the
right to impose additional conditions.  Savaria alleges that this condition violates our
holding in State v. Wilson (Mont. 1996), 926 P.2d 712, 53 St. Rep. 1034.  In Wilson we
stated:

A district court may not sentence a defendant to a term of imprisonment and reserve the right to impose additional restrictions during the defendant's probation.  Conditions of a defendant's probation should be imposed at sentencing.  If a court finds, after a hearing, that a defendant has violated the terms and conditions of a suspended sentence, the court may continue the suspended sentence with modified or additional terms and conditions.

Section 46-18-203(7), MCA.

Wilson, 926 P.2d at 717.

Although Wilson was decided after the District Court resentenced Savaria, the State concedes, and we agree, that it is nonetheless applicable. Therefore, this probation condition shall be stricken from the District Court's judgment issued on January 31, 1996.

Affirmed in part, reversed in part, and remanded to the District Court for proceedings consistent with this opinion.

/S/  JIM REGNIER

We Concur:

/S/  J. A.  TURNAGE
/S/  JAMES C. NELSON
/S/  KARLA M. GRAY
/S/  WILLIAM E. HUNT, SR.

Justice Terry N. Trieweiler specially concurring.

I concur with the majority's opinion as it relates to Issues 1, 2, and 4. I specially concur with the result of the majority's opinion as it relates to Issue 3; however, I do not agree with the reasons given for that result. Neither do I agree with the majority's reliance on this Court's unfounded decisions in State v. Crowder (1991), 248 Mont. 169, 810 P.2d 299, and Stilson v. State (1996), 278 Mont. 20, 924 P.2d 238. On the issue of the adequacy with which separate claims of common scheme have been alleged, I agree with Justice Leaphart's analysis.

I concur with the majority's conclusion that Savaria's sentence did not violate the prohibition against multiple punishments for the same crime for the reasons given by the District Court when it imposed Savaria's sentence. Savaria was punished for multiple offenses without regard to any common scheme. Each count of the State's information alleged a separate theft by Savaria of property with a combined value in excess of $500. Savaria pled guilty to all seven counts of felony theft. Whether or not each count was the result of a separate common scheme is irrelevant. Section 45-6-301(7)(b), MCA, provides that a person convicted of theft of property exceeding $500 in value may be punished by a term of ten years in prison. Section 45-6-301(8), MCA, provides that amounts involved in thefts committed pursuant to a common scheme may be aggregated, but also that amounts involved in thefts committed during the same transaction may be aggregated for purposes of determining the value of the property stolen. Therefore, whether the aggregate amount alleged in each count was the result of a common scheme, or the cumulative total of various items taken in the same transaction, makes no

difference.  Savaria pled guilty to seven separate incidents of theft involving items with
a combined value in excess of $500. For that reason, the District Court did not err when
it sentenced him separately to the maximum term allowable for each conviction.

    For these reasons, I concur with the result of the majority opinion although I do
not agree with all that is said therein.

                              /S/   TERRY N. TRIEWEILER

Justice W. William Leaphart, dissenting.

    I concur as to Issues number one, two and four.  I dissent as to Issue number
three.  In each of Counts II through VI the State charges Savaria with theft as part of a
"common scheme." Savaria contends that none of these five counts allege a separate,
stand alone "common scheme" because none of the counts alleges a separate "series of
acts," which is a sine qua non of a common scheme.  Section 45-2-101(7), MCA.
Therefore, in order to constitute a "common scheme," each count must be analyzed in
reference to the other counts.  That is, the allegations in the various counts, when read
together, allege a "series of acts" which constitute one all-encompassing common scheme
as opposed to five separate common schemes.

    Savaria's theory is best understood when one looks at Counts II and V.  In neither
count is there an allegation that Savaria engaged in a series of acts.  Rather, each count
alleges that Savaria obtained property from one business on one particular day.  Although
the Information does not say one way or the other, we must assume that the property was
obtained with one check in each of the two stores.  Tendering one bad check in one store
in one day does not constitute a "series of acts " which is a prerequisite to a common
scheme under  45-2-101(7), MCA.  Thus, when the State alleges "common scheme" in
Counts II and V, it has not alleged separate, stand alone "common schemes."  Both logic
and semantics dictate that Counts II and V must rely upon other counts in the Information
in order to satisfy the "series of acts" element of a "common scheme."  Clearly, the
charging document envisions one, not two common schemes in Counts II and V.

    Savaria is entitled to assume that the State used the term "common scheme"
consistently throughout the Information.  Since Counts II and V clearly charge one
interrelated common scheme, it is only logical that Counts III, IV and VI, which also fail
to allege any series of acts, employ the term "common scheme" in the same broad sense.

    The double jeopardy protections of the Fifth Amendment to the United States
Constitution and Article II, Section 25 of the Montana Constitution, prohibit imposition
of multiple punishments in a single prosecution for the same offense.  See State v. Palmer

(1983), 207 Mont. 152, 158, 673 P.2d 1234, 1237.

This Court concludes that the prosecutor had the discretion to charge separate common schemes and that each count "was an individual common scheme dependent on different evidence specific to each store." Although I agree that, given the right allegations, a prosecutor can charge separate common schemes, I do not agree that the allegations in Counts II through VI of this Information charge separate common schemes.

The counts do not each allege "different evidence" constituting a separate "series of acts."

On the contrary, in none of the five counts does the State specifically allege the number

of checks written in any one business establishment. Furthermore, in contrast to Count

VII, none of these counts involves more than one merchant.

The Information charges Savaria with committing various acts, specified in five interrelated counts. At sentencing, the court purported to circumvent the common scheme

conundrum when it stated:

> What I want understood is you're not being sentenced under the common
> scheme. You're being sentenced because each of the eight counts
> constitutes a felony. I have seven counts, excuse me, in that you took
> property valued at more than five hundred dollars.

I would agree with the court's approach if the State had charged felony theft of $500 or theft by common scheme in the alternative. However, it did not do so. Rather,

each count of the Information charged Savaria with "common scheme" involving more than $500. These acts constitute one common scheme. The court does not have leeway to redraft the Information, ignore the charge of common scheme and sentence on the basis of separate felony thefts. Accordingly, I conclude that, in sentencing Savaria separately to ten years on each of the five interrelated "common scheme" counts, the court subjected Savaria to multiple punishments for the same conduct, i.e., the same "common scheme." I would reverse and remand for resentencing.

/S/   W. WILLIAM LEAPHART