No. 97-291

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 29

STATE OF MONTANA,

Plaintiff and Respondent,

v.

GEORGE PAUL GUILLAUME,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

No

For Appellant:

Ronald L. Bissell, Cascade County Public Defender's Office, Great Falls, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Carol Schmidt, Assistant Attorney General, Helena, Montana; Brant Light, Cascade County Attorney, Michael Rausch, Deputy Cascade County Attorney, Great Falls, Montana

Heard: September 16, 1998

Submitted: November 12, 1998

Decided: February 19, 1999

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶1. Following a jury trial in the Eighth Judicial District Court, Cascade County, George Paul Guillaume (Guillaume) was found guilty of felony assault and criminal trespass to property, a misdemeanor. The District Court sentenced Guillaume to ten years in prison for felony assault, an additional five years in prison for use of a weapon, and six months in prison for criminal trespass to property, the six-month term to run concurrently with the fifteen-year term. Guillaume appeals that part of the court's order sentencing him to ten years in prison for felony assault and an additional five years in prison for use of a weapon on the basis of double jeopardy. We reverse and remand for resentencing.

¶2. The sole issue on appeal is whether application of the weapon enhancement statute, § 46-18-221, MCA, to a conviction for felony assault, a violation of § 45-5-202 (2)(b), MCA, violates the double jeopardy provision of Article II, Section 25 of the Montana Constitution?

¶3. The following facts are not disputed. On July 6, 1996, at approximately 3:15 a.m., Jodi Vellucci (Vellucci), a neighbor of Robert Bielen (Bielen), observed through her window a light in the unattached garage of Bielen. She also noticed that the walk-in door to the garage was open. Vellucci immediately told Bielen what she had seen, and Bielen went to the garage to investigate. As Bielen approached the garage, Guillaume exited the garage. Guillaume saw Bielen, held up a hammer that he had taken from the garage, and exclaimed, "I'll kill you." Guillaume swung the hammer at Bielen's head. Bielen reacted in such a way that the hammer missed his head but struck his hand. A struggle ensued and Guillaume escaped by jumping the fence. Guillaume was later apprehended by the police. Bielen told the police that he thought Guillaume was going to kill him when Guillaume swung the hammer at his head.

¶4. Guillaume was charged by information with felony assault, a violation of § 45-5-202(2)(b), MCA, and criminal trespass to property, a misdemeanor, a violation of § 45-6-203, MCA. A jury trial was held on January 27-28, 1997, and Guillaume was found guilty on all counts. On February 27, 1997, the District Court held a sentencing hearing. The court sentenced Guillaume to ten years in prison for felony assault, an additional five years in prison for use of a weapon pursuant to § 46-18-221, MCA (hereinafter the weapon enhancement statute), and six months in prison for criminal trespass to property, the six-month term to run concurrently with the fifteen-year term. The court stated that the reasons for the sentence were

Guillaume's prior criminal history and the severity of the offense. The court emphasized the fact that Guillaume threatened and tried to kill Bielen with a hammer.

¶5. On March 11, 1997, Guillaume filed a motion to reconsider sentencing on the ground that application of the weapon enhancement statute to his felony assault conviction violated the double jeopardy provision of the Montana Constitution. The court denied Guillaume's motion and issued its sentencing order on March 21, 1997. This appeal followed.

¶6. Does application of the weapon enhancement statute, § 46-18-221, MCA, to a conviction for felony assault, a violation of § 45-5-202(2)(b), MCA, violate the double jeopardy provision of Article II, Section 25 of the Montana Constitution?

¶7. The denial of Guillaume's motion for reconsideration of his sentence involves a legal question that we review *de novo* to determine whether the District Court's interpretation of the law is correct. State v. Zabawa (1996), 279 Mont. 307, 310, 928 P.2d 151, 153.

¶8. The double jeopardy provision of Article II, Section 25 of the Montana Constitution provides in part: "No person shall be again put in jeopardy for the same offense previously tried in any jurisdiction." This provision protects defendants from both multiple prosecutions for offenses arising out of the same transaction, and multiple punishments imposed at a single prosecution for the same offense. State v. Savaria (1997), 284 Mont. 216, 222, 945 P.2d 24, 28. *See also* State v. Vargas (1996), 279 Mont. 357, 360, 928 P.2d 165, 167; State v. Nelson (1996), 275 Mont. 86, 90, 910 P.2d 247, 250. In the instant case, Guillaume maintains that application of the weapon enhancement statute to his conviction for felony assault violated his right to be free from multiple punishments for the same offense.

¶9. Guillaume was sentenced to ten tears in prison for commission of felony assault. The statute defining felony assault provides in relevant part:

A person commits the offense of felony assault if the person purposely or knowingly causes . . . reasonable apprehension of serious bodily injury in another by use of a weapon.

Section 45-5-202(2)(b), MCA. Guillaume's sentence was enhanced by five years pursuant to the weapon enhancement statute. That statute provides in relevant part:

A person who has been found guilty of any offense and who, while engaged in the commission of the offense, knowingly . . . used a . . . dangerous weapon shall, in addition to the punishment provided for the commission of such offense, be sentenced to a term of imprisonment in the state prison of not less than 2 years or more than 10 years . . . . An additional sentence prescribed by this section shall run consecutively to the sentence provided for the offense.

Section 46-18-221(1) and (4), MCA. Guillaume asserts that had he not used a weapon in the struggle with Bielen, his actions would have fit the charge of misdemeanor assault, the penalty for which is imprisonment of no more than six months or a fine of no more than $500. *See* Section 45-5-201(1)(d) and (2), MCA ("A person commits the offense of assault if he . . . purposely or knowingly causes reasonable apprehension of bodily injury in another"). Guillaume asserts that the only factor raising his charge from misdemeanor assault to felony assault was his use of a weapon. Based on this distinction between misdemeanor and felony assault, Guillaume argues that the felony assault statute provides by its own terms for enhanced punishment for use of a weapon, and that application of the weapon enhancement statute to his conviction for felony assault effectively punished him twice for use of a weapon. This, Guillaume argues, is exactly what the double jeopardy provision was designed to prohibit.

**¶10. In arguing his position, Guillaume does not dispute that the weapon enhancement statute is constitutional on its face. Guillaume acknowledges that this Court has repeatedly held that Montana's weapon enhancement statute is a sentencing factor, and does not create a separate crime or element of a crime in violation of the protection against double jeopardy. State v. Krantz (1990), 241 Mont. 501, 512, 788 P.2d 298, 305 (citing State v. Forsyth (1988), 233 Mont. 389, 423, 761 P.2d 363, 384; State v. Spurlock (1987), 225 Mont. 238, 241, 731 P.2d 1315, 1317; State v. Davison (1980), 188 Mont. 432, 445, 614 P.2d 489, 497). However, Guillaume argues that the weapon enhancement statute is unconstitutional *as applied to him*. See State v. Crisp (1991), 249 Mont. 199, 202, 814 P.2d 981, 983 (A defendant may challenge a statute's constitutionality by arguing that it is unconstitutional on its face or that it is unconstitutional as applied to his particular situation). Specifically,**

**Guillaume argues that when use of a weapon is an element of the underlying offense, as it is in this case, it is a violation of double jeopardy to also apply the weapon enhancement statute.**

**¶11. Guillaume acknowledges that in <u>Zabawa</u>, a case involving facts nearly identical to the instant case, this Court held that application of the weapon enhancement statute to a conviction for felony assault did not violate the double jeopardy provision of the Fifth Amendment to the United States Constitution. <u>Zabawa</u>, 279 Mont. at 316, 928 P.2d at 156-57. However, Guillaume notes that we left unresolved in <u>Zabawa</u> the question whether application of the weapon enhancement statute to a conviction for felony assault violates the double jeopardy provision of Article II, Section 25, of the Montana Constitution. <u>Zabawa</u>, 279 Mont. at 310, 928 P.2d at 153. Our reasons for not addressing Zabawa's double jeopardy challenge under the Montana Constitution were as follows:**

[Zabawa] claims no greater protection from double jeopardy under Article II, Section 25 of the Montana Constitution than under the Fifth Amendment to the United States Constitution . . . . [Zabawa has] relied entirely on federal interpretations under the United States Constitution during oral argument; in Zabawa's view, those interpretations supported his argument under that Constitution. Accordingly, we address only the double jeopardy protection afforded under the United States Constitution, leaving for resolution in a future case . . . whether Article II, Section 25 of the Montana Constitution provides greater protection from double jeopardy than is provided by the United States Constitution.

<u>Zabawa</u>, 279 Mont. at 310, 928 P.2d at 153.

**¶12. Guillaume states that the instant case now presents the question left open in <u>Zabawa</u>. Guillaume claims that Article II, Section 25 of the Montana Constitution affords greater protection from double jeopardy than does the Fifth Amendment to the United States Constitution. In support of his claim, Guillaume undertakes an analysis of legislative intent similar to that employed in <u>Zabawa</u>, *see* <u>Zabawa</u>, 279 Mont. at 313-16, 928 P.2d at 155-57, and ultimately concludes that, in enacting the weapon enhancement statute, the Montana Legislature did not intend to impose multiple punishments where the underlying offense requires proof of use of a weapon as an element of the offense.**

¶13. We agree with Guillaume that Article II, Section 25 of the Montana Constitution provides greater protection from double jeopardy than is provided by the United States Constitution. However, we do not reach this conclusion on the basis of legislative intent. Zabawa is distinguishable from and has no bearing upon the instant case. In Zabawa, this Court was faced with a question of federal constitutional law and was bound to follow federal court decisions interpreting that law. Zabawa, 279 Mont. at 310, 928 P.2d at 153. Specifically, we were bound to follow Missouri v. Hunter (1983), 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535, wherein the United States Supreme Court held that, where legislative intent is clear, cumulative punishments imposed in a single trial do not violate the double jeopardy clause of the Fifth Amendment to the United States Constitution. Hunter, 459 U.S. at 366, 103 S. Ct. at 678. The Court reasoned:

With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.

Hunter, 459 U.S. at 359, 103 S.Ct. at 678. Instructed by Hunter, this Court inquired into whether, in enacting the weapon enhancement statute, the Montana Legislature intended to impose multiple punishments where the underlying offense requires proof of the use of a weapon as an element of the offense. Zabawa, 279 Mont. at 313, 928 P.2d at 155. We answered that question in the affirmative. Zabawa, 279 Mont. at 316, 928 P.2d at 156-57.

¶14. Unlike Zabawa, the issue in the instant case is one of Montana constitutional law.

The [Montana] Constitution vests in the courts the exclusive power to construe and interpret legislative Acts, as well as provisions of the Constitution. Inherent in this power is the responsibility to determine whether a particular law conforms to the Constitution.

In re License Revocation of Gildersleeve (1997), 283 Mont. 479, 484, 942 P.2d 705, 708 (citations omitted). As Justice Leaphart noted in his dissent to Zabawa:

Constitutional guarantees are not mere vessels to be left empty or filled at the whim of the legislative branch. Rather, they have intrinsic meaning which is independent of any

legislative intent.

Zabawa, 279 Mont. at 323-24, 928 P.2d at 161. Thus, pursuant to the doctrine of separation of powers embodied in Article III, Section 1 of the Montana Constitution, and pursuant to our duty to safeguard the rights and guarantees provided by this state's Constitution, and notwithstanding legislative intent, we must apply the protection afforded by the double jeopardy provision of Article II, Section 25 of the Montana Constitution.

**¶15. This Court has long embraced the principle that the rights and guarantees afforded by the United States Constitution are minimal, and that states may interpret provisions of their own constitutions to afford greater protection than the United States Constitution. State v. Johnson (1986), 221 Mont. 503, 512, 719 P.2d 1248, 1254 (citations omitted). In interpreting the Montana Constitution, this Court has repeatedly refused to "march lock-step" with the United States Supreme Court, even where the state constitutional provision at issue is nearly identical to its federal counterpart. *See e.g.,* Ranta v. State, 1998 MT 95, 55 St.Rep. 378, 958 P.2d 670 (holding that sentence review is a "critical stage" to which the right of counsel attaches); State v. Bullock (1995), 272 Mont. 361, 901 P.2d 61 (holding that a person may have a reasonable expectation of privacy in land that extends beyond the curtilage of his residence); State v. Johnson (1986), 221 Mont. 503, 719 P.2d 1248 (holding that defendant's statement that he would like to talk to "somebody" invoked his right to counsel).**

**¶16. Thus, as we have done in the past, we again refuse to march lock-step with the United States Supreme Court in interpreting the protection afforded by the double jeopardy provision of Article II, Section 25 of the Montana Constitution. We hold that Article II, Section 25 of the Montana Constitution affords greater protection against multiple punishments for the same offense than does the Fifth Amendment to the United States Constitution. We further hold that application of the weapon enhancement statute to felony convictions where the underlying offense requires proof of use of a weapon violates the double jeopardy provision of Article II, Section 25 of the Montana Constitution.**

**¶17. In so holding, we are guided by the fundamental principle embodied in double jeopardy. Simply put, double jeopardy exemplifies the legal and moral concept that no person should suffer twice for a single act. Although simply stated, the concept of**

**double jeopardy does not appear to be simply applied. One commentator notes:**

The double jeopardy clause has been the source of more confusion than enlightenment. The reason for this is to be found in the history of double jeopardy, in its varied sources, in its uneven development, [and] in its deceptively simple phraseology. It is easier to pay lip service to a principle than to give that principle life and meaning.

Jay A. Sigler, Double Jeopardy: The Development of a Legal and Social Policy 117 (1969). While several cases have presented courts with difficult double jeopardy questions, this case is not one of them. Under the facts of the instant case, double jeopardy is simply applied.

**¶18. The only factor raising Guillaume's charge from misdemeanor assault to felony assault was his use of a weapon. We interpret this distinction between the two offenses, and the different penalties imposed by each offense, as the legislature's way of punishing a criminal defendant for use of a weapon in committing an assault. Thus, when the weapon enhancement statute was applied to Guillaume's felony assault conviction, Guillaume was subjected to double punishment for use of a weapon: once when the charge was elevated from misdemeanor assault to felony assault, and again when the weapon enhancement statute was applied. We agree with Guillaume that this form of double punishment is exactly what double jeopardy was intended to prohibit.**

**¶19. The State argues that the double jeopardy clause of the Montana Constitution does not protect against multiple punishments for the same offense because such protection is not explicit in the clause. We disagree with the State's argument because it runs counter to prior precedent, *see* Savaria, 284 Mont. at 222, 945 P.2d at 28, *and* Vargas, 279 Mont. at 360, 928 P.2d at 167, and the principle that the rights and guarantees afforded by the United States Constitution are minimal. *See* Johnson, 221 Mont. at 512, 719 P.2d at 1254. In North Carolina v. Pearce (1969), 393 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664-65, the United States Supreme Court held that the double jeopardy clause of the Fifth Amendment to the United States Constitution protects against multiple punishments for the same offense. Because the double jeopardy clause of the federal constitution protects against multiple punishments for the same offense, the double jeopardy clause of the Montana Constitution provides at least the same protection. Moreover, it makes sense that**

"double jeopardy applies to multiple punishments because, if it did not, then the prohibition against multiple prosecutions would be meaningless; a court could simply achieve the same effect as a second prosecution by resentencing a criminal defendant after the defendant had served all or part of an initial sentence." Ex Parte Lange (1873), 85 U.S. 163, 175, 21 L.Ed. 872, 878, 18 Wall. 163.

¶20. Second, the State argues that application of the weapon enhancement statute to Guillaume's felony assault conviction results in only one punishment, not two. As support for its position, the State cites Davison, wherein this Court held that the weapon enhancement statute is a sentencing factor, and does not create a separate offense. Davison, 188 Mont. at 447, 614 P.2d at 498. On this basis, the State argues that "any supposed" protection against multiple punishments is not implicated in this case. Further, the State argues that the separation of powers doctrine prohibits this Court from infringing on the Montana Legislature's exclusive power, embodied in Article V, Section 11 of the Montana Constitution, to determine appropriate punishments for criminal offenses.

¶21. Although the State has correctly cited the above authorities, its reliance on them is misplaced. Davison is inapposite to the issue being decided in this case. The issue is not whether Guillaume committed two offenses by use of a weapon; rather, the issue is whether Guillaume was punished twice for use of a weapon. On this point, the same commentator cited above summarizes the thoughts of many double jeopardy critics:

The need for clarification of double jeopardy is indubitable. One necessary distinction is that between double prosecution and double punishment. In determining this question, inquiry should be concentrated upon the nature of the defendant's conduct, [and] the physical character of the criminal transaction, rather than upon the number of offenses arising from the transaction. The protection against multiple punishment has as its rationale the belief that the defendant's punishment should be commensurate with but not greater than his criminal liability.

Sigler, supra, at 193.

¶22. The argument that application of the weapon enhancement statute to a felony assault conviction results in only one punishment for use of a weapon, rather than

two, is one of pure semantics. Were we to accept this argument, we would in effect strip double jeopardy of all meaning. We refuse to merely pay lip service to the fundamental principle of double jeopardy.

¶23. Although it is true that the Montana Constitution confers upon the legislature the power to set appropriate punishments for criminal acts, *see* Art. V, Sec. 11, Mont. Const., this power is not unbridled. The double jeopardy clause of Article II, Section 25 of the Montana Constitution prohibits the legislature from imposing on criminal defendants multiple punishments for the same offense. As previously stated, this Court is vested with the exclusive power to review whether a particular legislative act conforms to the Constitution. Gildersleeve, 283 Mont. at 484, 942 P.2d at 708. We conclude that our holding in the instant case does not violate the separation of powers doctrine.

¶24. The State further argues that any perceived double jeopardy violation in this case is really a product of legislative drafting. The State asserts that a fifteen-year prison term could have been imposed on Guillaume had the legislature increased the prison time for felony assault within the felony assault statute and excluded the offense of felony assault in the application of the weapon enhancement statute. The State argues that the legislature's ability to modify the felony assault penalty to achieve the same result that is achieved in the present sentencing scheme demonstrates that no double jeopardy violation exists in this case. We disagree. The fact that modification of the felony assault statute could achieve the same result as the present sentencing scheme does not mean that no double jeopardy violation exists in this case.

¶25. We reverse the District Court's sentencing order and remand for rehearing and resentencing consistent with this opinion.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER

Justice W. William Leaphart, specially concurring.

**¶26. I specially concur with the opinion of the Court and I write separately to address some of the comments set forth in the dissent. Justice Nelson posits that, Article II, Section 25 of the Montana Constitution, by its _plain language_, clearly provides less protection against double jeopardy than the Fifth Amendment to the U. S. Constitution. He quotes the language of Article II, Section 25--"No person shall be again put in jeopardy for the same offense previously tried in any jurisdiction"--and observes that there "is certainly no textual mention of any protection from multiple punishments." From this observation, he suggests that the only reason that Article II, Section 25 affords protection against multiple punishments is because the Fifth Amendment does and because, under well accepted principles of federalism, we cannot interpret our constitution as providing any less protection.**

**¶27. Justice Nelson attributes more textual substance to the Fifth Amendment than it is due. In fact, when one compares the language of the two constitutional guarantees, the Montana Constitution is the more specific. The Fifth Amendment merely states: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V. There is no mention of any protection other than not being twice placed in jeopardy for the same offense. Contrary to the logic of Justice Nelson's dissent, the Fifth Amendment makes no textual mention of punishment, multiple punishment, prosecutions or offenses "tried" in any jurisdiction. It merely invokes the concept of "jeopardy."**

¶28. Both this Court and the U.S. Supreme Court have interpreted their respective double jeopardy clauses as offering protection against three distinct abuses: a second prosecution for the same offense following an acquittal; a second prosecution for the same offense following a conviction; and multiple punishments for the same offense. State v. Nelson (1996), 275 Mont. 86, 90, 910 P.2d 247, 250; United States v. Halper (1989), 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487, 496. These interpretations cannot be traced to the plain language of either constitutional provision since neither constitution makes any reference to prosecutions, punishments, convictions or acquittals. Rather, the interpretations derive from the concept of *jeopardy*--a term that is used in both documents. Jeopardy is the danger of conviction and punishment incurred by a defendant when he or she is put on trial for a criminal charge. *See* Black's Law Dictionary 835 (6th ed. 1990).

¶29. Thus, when we interpret the Montana Constitution as affording protection against multiple punishments, we do so, not because the text of the United States Constitution sets this as an express minimum--indeed, it makes no direct reference to punishment--but because the Montana Constitution, like the U.S. Constitution, specifically protects against double "jeopardy." In addressing the question of whether Article II, Section 25 protects against enhanced punishments for use of a weapon, we therefore interpret the concept of "jeopardy" as that word is used in the text of the Montana Constitution, independently of how it has been interpreted in the U.S. Constitution.

¶30. As both the Court and the dissent recognize, the Bill of Rights Committee saw to it that our constitution prohibits the existing federal practice of allowing a person already tried in another jurisdiction to be again tried by the State of Montana. This fact alone illustrates that "jeopardy," as that word is used in our constitution, has a more expansive meaning than it does in the federal constitution. Given that the concept of "jeopardy" appears independently in the Montana Constitution and given further that it offers broader protection from multiple prosecutions than the U.S. Constitution, why would we turn to the federal courts to ascertain whether or not the Montana Constitution protects against enhanced punishments? Where in the transcripts of the Constitutional Convention is there any support for the proposition, adopted by the U.S. Supreme Court in Missouri v. Hunter (1983), 459 U.S. 359, 103 S. Ct. 673, 74 L.Ed.2d 535, that the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended? According to the U.S. Supreme Court's interpretation of the Fifth

Amendment, the protection against multiple punishments has no inherent constitutional significance; it means only what Congress, or the legislature, through statutory enactment, says it means. However, as I stated in my dissent in State v. Zabawa (1996), 279 Mont. 307, 928 P.2d 151, "[c]onstitutional guarantees are not mere vessels to be left empty or filled at the whim of the legislative branch. Rather, they have intrinsic meaning which is independent of any legislative intent." *Zabawa*, 279 Mont. at 323-24, 928 P.2d at 161 (Leaphart, J., dissenting). If the prohibition against multiple punishments is to have any efficacy, it must have some constitutional essence which is beyond legislative amendment or interpretation. If, as both state and federal courts agree, double jeopardy proscribes multiple punishments for the same offense, the inescapable conclusion is that the enhancement provision of § 46-18-221, MCA, is an additional and second punishment for use of a weapon in an assault. As such, it is a multiple punishment in violation of the constitutional prohibition against double jeopardy found in Article II, Section 25 of the Montana Constitution.

¶31. If the protection against double punishments has any meaning, it must certainly encompass a statute which "enhances" punishment for use of a weapon after a defendant has already been punished for use of a weapon in the underlying offense. To hold otherwise, leaves the constitutional guarantee an empty, meaningless promise.

/S/ W. WILLIAM LEAPHART

Justice James C. Nelson dissents.

¶32. I cannot agree with the Court's decision in this case. As facially appealing as is its approach to the question of whether Montana's double jeopardy provision, Article II, Section 25, provides greater protection against multiple punishments than the does the Fifth Amendment, the majority's conclusion that it does is not supported by a shred of legal authority. Reduced to its essentials, the Court concludes that Article II, Section 25, provides this greater protection for no other reason than that we say it does.

**¶33. Understandably, the Court does not rely on any argument made by Guillaume. His entire brief and oral argument was devoted, not to developing any legal basis for the majority's holding here, but, rather, to simply rehashing why, in *State v. Zabawa* (1996), 279 Mont. 307, 928 P.2d 151, the dissent was right and the Court was wrong. He, like the majority, utterly failed to develop any independent and legally supportable theory based upon the language of Article II, Section 25, or its history in the 1971-72 Constitutional Convention that would justify the holding that this Court has reached. The Court does no better in its opinion. In fact, the majority pointedly ignores the legislative history of Article II, Section 25--no doubt because it could not find in the transcripts of the Constitutional Convention any support for its interpretation.**

**¶34. Indeed, it is clear that the Bill of Rights Committee was concerned, not with expanding the protections already provided by the Fifth Amendment, but rather, it was determined only that Montana's Constitution prohibit the existing federal practice of allowing a person already tried in one jurisdiction to be again tried by the State. See <u>Montana Constitutional Convention,</u> Verbatim Transcript, Vol. II, at p. 641 and Vol. V, at pp. 1776-79.**

**¶35. In truth, by its plain language, Article II, Section 25, provides less protection against double jeopardy than does the Fifth Amendment. In pertinent part, Montana's double jeopardy clause states unambiguously that:**

No person shall be again put in jeopardy for the same offense previously tried in any jurisdiction.

There is no mention in Article II, Section 25, of any protection other than not being tried twice for the same offense. There is certainly no textual mention of any protection from multiple punishments. As the majority does recognize, the only reason why Article II, Section 25, provides as much protection as does the Fifth Amendment is because we cannot constitutionally interpret Montana's Double Jeopardy Clause as providing less--notwithstanding that would be the obvious conclusion from a simple reading of the text of Article II, Section 25, itself. And, it is precisely because the protections afforded by Article II, Section 25, are coextensive with the Fifth Amendment that our decision in *Zabawa*-- which was based upon federal law--remains correct.

¶36. The majority states that it refuses to "pay lip service" to the fundamental principle of double jeopardy. More correctly, it refuses to pay lip service to the plain language of Article II, Section 25. Refusing "to march lock step" with the federal constitution is commendable and appropriate where Montana's Constitution actually provides more protection than does its federal counterpart--and our State constitution does in many notable respects. Here, however, the Court has gone beyond refusing to march lock step. Rather, in creating from whole cloth a greater double jeopardy protection than is contained in the plain language of Article II, Section 25, and in its history at the Constitutional Convention and in the federal constitution, the majority has marched defiantly backwards through the parade, around the bend and into the swamp.

¶37. Similarly, Justice Leaphart's attempt to shore up the majority opinion is unavailing. While state courts interpreting their own constitutional double jeopardy clauses are circumscribed by the U.S. Supreme Court's interpretation of the double jeopardy clause of the Fifth Amendment to provide no less protection than does the federal constitution, that is not to say that even this country's highest court is in agreement that double jeopardy encompasses the concept of multiple punishments.

¶38. Like Article II, Section 25, the double jeopardy clause of the Fifth Amendment refers only to "jeopardy," not punishment--"nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." In his dissent in *Dept. of Revenue of Montana v. Kurth Ranch* (1994), 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767, and noting this lack of textual reference to punishment, Justice Scalia traces in some detail the historical and jurisprudential history of the federal double jeopardy clause and concludes that "'[t]o be put in jeopardy' does not remotely mean 'to be punished,' . . . [and that] . . . by its terms, this provision prohibits, not multiple punishments, but only multiple prosecutions." *Kurth*, 511 U.S. at 798, 803, 114 S.Ct. at 1955, 1958 (Scalia, J., dissenting, citing Chief Justice Stone in *In re Bradley* (1943), 318 U.S. 50, 63 S.Ct. 470, 87 L.Ed 608 and Justice Frankfurter in *United States ex rel. Marcus v. Hess* (1943), 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443). Justice Scalia points out that the belief that there is a multiple-punishment component to the double jeopardy clause can be traced to dictum in *Ex parte Lange* (1874), 18 Wall. 163, 21 L. Ed. 872, but that it was not until *United States v. Halper* (1989), 490 U.S. 435, 109 S. Ct. 1892, 104 L.Ed.2d 487, that the Court actually invalidated a legislatively authorized successive punishment on the basis of the this dictum. *Kurth*, 511 U.S. at 800, 114 S.Ct. at 1956, (Scalia, J., dissenting).

¶39. *Halper* has, of course, now been abrogated, see *Hudson v. United States* (1997), 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450), and the U.S. Supreme Court has returned to its pre-*Halper* interpretation of the Double Jeopardy Clause which acknowledges a constitutional prohibition against multiple punishments but requires successive criminal prosecutions. *Hudson*, 522 U.S. at ___, 118 S.Ct. at 493, (citing, among other cases, *Missouri v. Hunter* (1983), 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535, for the proposition that in the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution and then only when such occurs in successive proceedings).

¶40. Accordingly, we necessarily come full circle. There is simply no jurisprudential basis for concluding that Article II, Section 25, provides any greater double jeopardy protection than does the Fifth Amendment, as interpreted by the U.S. Supreme Court. And, it is precisely because the protections afforded by Article II, Section 25, are coextensive with the double jeopardy clause of the Fifth Amendment that our decision in *Zabawa*--which was based upon federal law, namely *Missouri v. Hunter*--remains correct.

¶41. While the majority chooses to ignore the intent of the legislature in enacting the weapons enhancement statute, § 46-18-221, MCA, we are not at liberty to declare this statute unconstitutional in its application on the basis of our interpolation into Article II, Section 25, of language that the people themselves did not include in this constitutional provision when they enacted it. Indeed, if, as here, this Court can give any meaning it desires to a constitutional provision without any linkage to its text or history, then there really is no point in having a constitution at all.

¶42. I dissent.

/S/ JAMES C. NELSON

Chief Justice J. A. Turnage and Justice Karla M. Gray concur in the foregoing dissent.

No

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY