No. 02-037

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 340

---

STATE OF MONTANA,

Plaintiff and Respondent,

v.

LARRY TURBIVILLE,

Defendant and Appellant.

---

APPEAL FROM: District Court of the Sixteenth Judicial District,
In and For the County of Fallon, Cause No. DC 2000-01,
Honorable Joe L. Hegel, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Gary R. Thomas, Thomas Law Office, Red Lodge, Montana

For Respondent:

Honorable Mike McGrath, Attorney General; Brenda Nordlund,
Assistant Attorney General, Helena, Montana

Albert R. Batterman, County Attorney, Baker, Montana

---

Submitted on Briefs: September 26, 2002

Decided: December 15, 2003

Filed:

______________________________________
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Larry Turbiville (Turbiville), the holder of a North Dakota driver's license, was convicted in Fallon County Justice Court for driving a motor vehicle while under the influence of alcohol in violation of § 61-8-401, MCA (1997). Turbiville appealed his conviction to the Sixteenth Judicial District Court of Fallon County for a trial *de novo* and moved to suppress the evidence obtained from his breath tests. Following the court's denial of his motion, Turbiville pled guilty to driving while under the influence of alcohol, reserving his right to appeal the District Court's denial of his motion to suppress. Turbiville now appeals the denial of his motion to this Court. We affirm.

¶2 We rephrase Turbiville's issues on appeal as follows:

¶3 Did the District Court err in denying Turbiville's motion to suppress the results of his breath tests, which was premised on the basis that he was provided misleading information about the ramifications of his failure to take the test?

## FACTUAL BACKGROUND

¶4 On the evening of August 20, 1998, Officer Pat Harrison of the Montana Highway Patrol (Officer Harrison) was patrolling north on Montana Highway 7 in Fallon County when he came upon a Ford pickup, driven by Larry Turbiville, which he observed crossing over the center line. Officer Harrison turned his vehicle around and began following the pickup. In the course of several miles, Harrison observed the pickup again cross over the center and fog lines. He also noticed that the vehicle was operating with expired registration

tags. Officer Harrison activated his overhead lights and the pickup came to a stop on the side of the road.

¶5 As Officer Harrison approached the vehicle, he smelled what he believed to be alcohol coming from Turbiville. Harrison ordered Turbiville out of the vehicle and into the patrol car where he asked him if he had been drinking. When Turbiville responded that he had had "one or two," Officer Harrison noticed that Turbiville's speech was slurred. After completing a citation for expired registration, Officer Harrison administered a Horizontal Gaze Nystagmus test (HGN test) to Turbiville. He then read a Preliminary Alcohol Screening Test Advisory, stating in relevant part:

> Under Montana law, I have the right to ask you to take a preliminary breath test to estimate your alcohol concentration level.
>
> You may refuse to take this test. However, if you do, your driver's license will be suspended for six months. If you have refused to take a similar test in the past 5 years, your driver's license will be revoked for one year.
>
> . . . .
>
> Will you take a preliminary breath test?

¶6 Turbiville, a North Dakota resident and holder of a North Dakota driver's license, was provided no additional information concerning his rights regarding the preliminary breath test (PBT). In particular, Officer Harrison did not advise Turbiville that he could refuse to take the test and challenge the seizure of his license in district court.

¶7 After hearing the advisory, Turbiville submitted to the PBT, which estimated a body alcohol content in excess of the legal limit. As a result, Turbiville was placed under arrest for driving under the influence of alcohol (DUI) and transported to the Fallon County

Sheriff's Office. Upon arriving at the Sheriff's Office, Turbiville was asked to submit to a test on the Intoxilyzer 5000, a non-portable device designed to measure the body's blood alcohol content, and read the Montana Department of Justice Implied Consent Advisory, which states in pertinent part:

> If you refuse this test, your driver's license will be seized and suspended for six months.
>
> If you have refused similar testing within the past five years and you refuse again today, your driver's license will be seized and revoked for one year.
>
> . . . .
>
> If you refuse testing, you may contest the action taken against your license by filing a petition in district court. The action will not be overturned unless you prove that your arrest or investigatory stop was unlawful or that you did not refuse testing. You may ask the court to restore your driving privileges until the court rules on your petition.

¶8 After hearing this advisory, Turbiville consented to a breath test on the Intoxilyzer 5000. He also signed a written copy of the advisory, acknowledging that it had been read to him. Turbiville then took the test on the Intoxilyzer 5000, which reported a blood alcohol content of .194.

¶9 On August 24, 1998, Turbiville appeared before the Justice Court of Fallon County, pleading not guilty to his second offense of driving under the influence of alcohol, in violation of § 61-8-401, MCA. Following a bench trial in Justice Court, Turbiville was found guilty of DUI. He subsequently appealed his conviction to the Sixteenth Judicial District Court of Fallon County for a trial *de novo*. Prior to trial, Turbiville moved the court to suppress the results of the breath tests performed the evening of his arrest on the grounds

that his due process rights were violated by Montana's Implied Consent Advisory, which, he argued, was inaccurate when applied to nonresidents. The District Court rejected Turbiville's contentions and denied his motion. Thereafter, Turbiville entered a plea bargain agreement with the State agreeing to plead guilty to DUI, and reserving his right to appeal the District Court's denial of his motion to suppress the evidence resulting from his breath tests. Turbiville now appeals.

## STANDARD OF REVIEW

¶10 A district court's denial of a criminal defendant's motion to suppress is reviewed on appeal to determine whether the court's "findings of fact are clearly erroneous, and whether those findings were correctly applied as a matter of law." *State v. Vonbergen*, 2003 MT 265, ¶ 7, 317 Mont. 445, ¶ 7, 77 P.3d 537, ¶ 7 (citations omitted). Because the issue of whether a defendant's due process rights were violated is a question of law, we review the district court's conclusion to determine whether its interpretation of the law was correct. *State v. Strand* (1997), 286 Mont. 122, 124, 951 P.2d 552, 553 (*overruled on other grounds by State v. Minkoff*, 2002 MT 29, ¶ 23, 308 Mont. 248, ¶ 23, 42 P.3d 223, ¶ 23).

## DISCUSSION

¶11 **Did the District Court err in denying Turbiville's motion to suppress the results of his breath tests, which was premised on the basis that he was provided misleading information about the ramifications of his failure to take the test?**

¶12 Turbiville claims that the results of the PBT and the later administered Intoxilyzer breath test should have been suppressed because the advisories given to him were inadequate

and misleading, and thereby amounted to a violation of his due process rights. First, Turbiville contends the PBT advisory was inadequate because it failed to advise him of his right to judicial review of the license suspension should he refuse to take the test. In support of his argument, Turbiville relies on *Pickens v. Shelton-Thompson*, 2000 MT 131, ¶ 18, 300 Mont. 16, ¶ 18, 3 P.3d 603, ¶ 18, for the proposition that "notice which is confusing, misleading, or inaccurate is insufficient to meet procedural due process requirements under the United States Constitution because such notice does not adequately safeguard a person's concomitant due process right of an opportunity to be heard." The State counters that Turbiville had no concomitant due process right to a hearing when he was presented with the opportunity to refuse the preliminary breath test, and thus, his reliance on *Pickens* is misplaced.

¶13 Factually, *Pickens* differs significantly from this case. In *Pickens*, child support obligor Pickens timely filed a petition for judicial review of a CSED order and mailed copies of the petition to the obligee and to CSED. *Pickens*, ¶ 4. CSED moved to dismiss for lack of jurisdiction because Pickens had failed to properly serve the parties as required by § 40-5-253, MCA. *Pickens*, ¶ 4. The District Court granted the motion to dismiss, and Pickens appealed. *Pickens*, ¶ 6.

¶14 On appeal, we observed that the notice provisions contained in the CSED order informed Pickens of his right to petition for judicial review under the provisions of MAPA (Title 2, Chapter 4, Part 7, MCA) which did not require issuance and service of a summons in conjunction with the petition, but failed to inform him of the more stringent service

requirements of § 40-5-253, MCA, which required personal service with a summons. *Pickens*, ¶¶ 3, 10. By omitting any reference to the different procedural requirements for CSED actions contained in § 40-5-253, MCA, the notice implied that judicial review was governed exclusively by MAPA, causing Pickens to improperly serve his petition for judicial review, and, ultimately, lose the opportunity to meaningfully exercise that right. *Pickens*, ¶¶ 4, 17. We accordingly reversed the district court's order of dismissal and remanded for further proceedings on Pickens' petition for judicial review. *Pickens*, ¶ 23.

¶15 Here, unlike the notice provided in *Pickens*, the PBT advisory did not provide misleading or inaccurate information. The advisory accomplished its intended purpose of informing Turbiville of his choices at the time of testing and of the potentially serious consequences of refusing to submit to a blood or breath test. It did not mislead Turbiville into forfeiting his right to a later hearing or otherwise disturb that right. If Turbiville would have refused the test, and his license had been suspended, he would have nonetheless retained his right to contest the suspension in the district court under § 61-8-403, MCA. Thus, in contrast to *Pickens*, there was not a "concomitant due process right of an opportunity to be heard" safeguarded by the advisory here. *Pickens*, ¶ 18.

¶16 Turbiville asserts that if he had been advised of his right to a hearing to challenge a suspension of his license, he would have refused the PBT, and thus, the advisory was insufficient, thereby violating his due process rights. To the contrary, the option to refuse a breath or blood test is not a matter of due process, but a matter of grace bestowed by the Legislature. *See City of Helena v. Barrett* (1990), 245 Mont. 35, 37, 798 P.2d 544, 545

(citing *South Dakota v. Neville* (1983), 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748). Under Montana law, every person who operates or is in actual physical control of a motor vehicle upon the ways of this state has *impliedly consented* to a test of the person's blood or breath for purposes of determining the presence of alcohol or drugs in the body. Section 61-8-402(1), MCA. Because refusal to take the test is a matter of grace, the Legislature may contour this favor in a manner it deems appropriate. Montana's implied consent statutes do not specifically require an officer to provide information to an arrested motorist as to the ramifications of refusal to take the requested test. *State v. Simmons*, 2000 MT 329, ¶ 17, 303 Mont. 60, ¶ 17, 15 P.3d 408, ¶ 17. Indeed, we have recognized that a driver is not even entitled to be informed that he or she may refuse the test. *Simmons*, ¶ 17. Therefore, we conclude Turbiville's right to due process was not implicated by the advisory's failure to notify him of the right to judicial review in the event he refused the preliminary breath test.

¶17 Turbiville next challenges the constitutionality of § 61-8-402(4) and (7), MCA, as well as § 61-1-136(3), MCA, both on their face and as applied, arguing that the advisories given to him for both the PBT and the Intoxilyzer tests violated his guarantee to due process of law by failing to inform him, a nonresident, that only his Montana driving privileges would be subject to suspension and any other action taken against his license would depend upon proceedings in North Dakota, his home state. Accordingly, Turbiville argues, the advisories were inaccurate and the results of his breath tests should have been suppressed.

¶18 When the constitutionality of a statute is challenged, the party making the challenge bears the burden of proving, beyond a reasonable doubt, that the statute is unconstitutional,

and any doubt must be resolved in favor of the statute. *State v. Stanko*, 1998 MT 321, ¶ 15, 292 Mont. 192, ¶ 15, 974 P.2d 1132, ¶ 15. A statute may be challenged as violative of the right to due process for its vagueness on two different bases: (1) the statute is so vague that it is void on its face; or (2) the statute is vague as applied in a particular situation. *State v. Britton*, 2001 MT 141, ¶ 5, 306 Mont. 24, ¶ 5, 30 P.3d 337, ¶ 5. The void-for-vagueness doctrine requires that a criminal statute define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *Britton*, ¶ 6.

¶19 Here, the essence of Turbiville's constitutional challenge is that Montana's implied consent advisory statutes provide misleading and inaccurate information to nonresident drivers about the consequences of refusing to submit to a breath or blood test. Turbiville contends that, as a North Dakota resident with a North Dakota driver's license, the advisories' warning that Montana would suspend or revoke his driver's license upon his refusal to submit to a breath test was inaccurate and misleading because Montana has no actual authority to suspend or revoke a driver's license issued by another state. Thus, Turbiville argues, he was left "to engage in a guessing game as to what was *really* meant by the threat to suspend his 'driver's license' . . . ."

¶20 However, this Court has twice considered and rejected Turbiville's basic argument that his due process rights were violated when he was provided information on the consequences of a refusal to submit to a breath test. In *Simmons*, ¶ 18, and *City of Missoula v. Ferguson,* 2001 MT 69, ¶ 11, 305 Mont. 36, ¶ 11, 22 P.3d 198, ¶ 11, both factually and

legally similar to this case, we concluded that the implied consent advisory found at § 61-8-402, MCA, informing a driver of the potentially serious consequences of refusing a blood or breath test, was not inaccurate or misleading when applied to nonresident drivers. In *Simmons*, we reasoned that because the statutory definition of "driver's license" includes "any nonresident's driving privilege," § 61-1-136(3), MCA, the advisory read to a nonresident driver was technically correct in informing the driver that his or her "driver's license will be seized and suspended." *Simmons*, ¶ 16.

¶21 Here, as in *Simmons*, § 61-1-136(3), MCA, clearly defines "driver's license" as including any "nonresident's driving privilege." When unambiguous, our duty in interpreting statutes is to apply their plain meaning. *State v. Lacasella*, 2002 MT 326, ¶ 40, 313 Mont. 185, ¶ 40, 60 P.3d 975, ¶ 40 (Rice, J., dissenting). Here, § 61-1-136(3), MCA, is neither vague on its face, nor has Turbiville shown it to be vague as applied to his particular situation. Rather, the advisory accomplished its purpose of informing Turbiville, an apparently intoxicated individual, of the potentially serious consequences of losing his Montana driving privileges should he refuse to take a breath test. *See Simmons*, ¶ 17. Consequently, Turbiville's constitutional challenge for vagueness fails.

¶22 Turbiville additionally attacks § 61-8-402(4) and (7), MCA, as unconstitutional; however, he advances no discernable arguments in support thereof. When "the challenged statute is 'reasonably clear in its application to the conduct of the person bringing the challenge, it cannot be stricken for vagueness.'" *State v. Dixon*, 2000 MT 82, ¶ 20, 299

Mont. 165, ¶ 20, 998 P.2d 544, ¶ 20. Thus, the holding in *Simmons* controls this case.

Accordingly, the District Court did not err in denying Turbiville's motion to suppress.

¶23     Affirmed.


                                        /S/ JIM RICE


We concur:

/S/ PATRICIA COTTER
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART

[end]