Justice Laurie McKinnon,
specially concurring.
¶31 I agree with the Court’s decision to affirm the denial of Armitage’s motion to suppress. I would do so, however, on the basis that Armitage presented no credible evidence that she was coerced into taking the breath test. I believe the Court’s decision addressing the validity of the Missoula ordinances, therefore, amounts to an improper advisory opinion. Furthermore, since the Court has chosen nonetheless to express its views on the ordinances’ validity, I disagree with the *456 Court’s conclusion that the ordinances, which criminalize a refusal to take a breath or blood alcohol test, “pose no conflict with state [implied consent] law.” Opinion, ¶ 22.
¶32 Initially, our decision today concerning the validity of the Missoula ordinances constitutes an improper advisory opinion. In Plan Helena, Inc. v. Helena Regional Airport Authority Board, 2010 MT 26, 355 Mont. 142, 226 P.3d 567, an action was filed in the First Judicial District Court regarding the proposal of the Helena Regional Airport Authority Board (HRAA) to lease nine acres of its land to Blue Cross Blue Shield of Montana (BCBS). The primary issue concerned which statutory scheme within the Airport Authorities Act (Title 67, chapter 11, MCA) governed the lease of property owned by HRAA to private commercial businesses whose activities are not specifically aeronautically related. Ultimately, BCBS determined not to go through with the lease and was dismissed from the case. This event rendered the matter moot. Nevertheless, because “the parties desired a ruling on the merits,” the district court proceeded to issue two orders concerning the applicability of the statutes. Plan Helena, ¶¶ 3-5. Plan Helena (the party dissatisfied with the district court’s rulings) then appealed to this Court.
¶33 On appeal, we unanimously vacated the district court’s orders and remanded with instructions to dismiss the action as nonjusticiable. We began with the well-established principles that the judicial power of Montana’s courts is limited to justiciable controversies and that Montana courts, therefore, may not render advisory opinions. Plan Helena, ¶¶ 6,9. We explained that the “cases” and “controversies” that are within the judicial power to determine must “admit[ ] of specific relief through decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts, or upon an abstract proposition.” Plan Helena, ¶ 9 (internal quotation marks omitted). We reiterated that courts have an independent obligation to determine whether jurisdiction exists — including whether the justiciability requirements have been met — and that a court lacks jurisdiction to give advisory opinions. Plan Helena, ¶ 11. Based on these principles, we observed that once BCBS determined not to go through with the lease and was dismissed from the case, the dispute over the interpretation of the Airport Authorities Act became moot and the district court no longer had a justiciable case or controversy before it. The district court was required, therefore, to dismiss the action at that point. Plan Helena, ¶ 12. The fact that the remaining parties in the suit desired a ruling on the merits could not *457 create a justiciable controversy.
¶34 Critical to the present case is the fact that Armitage has never been charged with a violation of the Missoula ordinances for her refusal to provide a breath test upon Officer Matrix's initial request. This case, therefore, does not present a direct challenge to the ordinances, for Armitage has not been prosecuted under them.
¶35 Armitage apparently sought to challenge the ordinances collaterally, under the theory that the threat of being prosecuted for violating the ordinances coerced her into providing a breath sample later at the police station. This theory is questionable in light of our decision in Nichols v. Department of Justice, 2011 MT 33, 359 Mont. 251, 248 P.3d 813, where we indicated that advising a person of the consequences of refusing to provide a breath sample does not amount to an unconstitutional threat: “Nichols also could not have suffered a [search or seizure] due to the ‘threat’ of driver’s license suspension. Nichols has not explained how the officer’s explanation of the rights and consequences of her choices constituted either a ‘threat’ or an unconstitutional search or seizure.” Nichols, ¶ 16.
¶36 But even assuming, for the sake of discussion, that a “threat” theory is a plausible basis for reaching the validity of the ordinances, this theory cannot apply here because the District Court specifically determined that Armitage’s consent was given freely, and Armitage has not pointed to any evidence refuting that determination. Following its review of the Municipal Court record, the District Court stated as follows:
The evidence that was presented on the issue favors the City. The Defendant did not testify to present any evidence that she was “intimidated or acted against her will” when consenting to the Intoxilyzer at the Detention Center.... It is true that she refused an earlier request to take the preliminary breath test, but there is nothing in evidence to suggest duress or intimidation was at play when she reversed her decision and submitted to testing at the Detention Center. What the DVD shows is a chatty and overtly friendly exchange between Matrix and the Defendant at the Detention Center. There is absolutely nothing in the DVD to suggest that the Defendant was in any way intimidated or unwilling when she consented to take the Intoxilyzer, and in fact, the DVD portrays exactly the opposite.
¶37 Again, Armitage has pointed to no evidence refuting this determination by the District Court. While she makes conclusory assertions in her briefs on appeal that she was intimidated, such *458 assertions do not establish this as fact. As we noted in City of Helena v. Whittinghill, 2009 MT 343, ¶ 21 n.2, 353 Mont. 131, 219 P.3d 1244, “[a] party can not establish facts in a case by asserting them in a brief. Those are nothing more than an attorney’s statements, which are not evidence.”
¶38 Accordingly, “[a]ny analysis of the underlying substantive issues in this case would be merely advisory because we cannot grant [Armitage] the relief [she] sought originally” — i.e., suppression of all evidence obtained as a result of the investigative stop. Houden v. Todd, 2014 MT 113, ¶ 27, 375 Mont. 1, 324 P.3d 1157. Whether this Court upholds the Missoula ordinances or strikes them down, such holding is entirely academic. Armitage is not entitled to any relief for the simple fact that she has suffered no injury as a result of the ordinances’ application. She was not charged with an offense under the ordinances, nor was she coerced or intimidated by the ordinances into giving her consent to the breath test at the police station.
¶39 For these reasons, we have no justiciable basis for considering the validity of the Missoula ordinances. Although the parties may desire to hear our views on the subject, “it is well established that a party cannot waive or confer jurisdiction by consent.” Big Spring v. Conway, 2011 MT 109, ¶ 23, 360 Mont. 370, 255 P.3d 121; accord Plan Helena, ¶¶ 13-14. Our decision with regard to the ordinances is purely advisory, and I disagree with the Court’s decision to reach the merits.
¶40 Since the Court has nonetheless chosen to address the validity of the ordinances, I feel constrained to express my disagreement with the Court’s analysis. In my view, the Court disregards the clear statutory language of §§ 61-8-402 and -409, MCA, expressly creating a right to refuse a requested test, and our own precedents recognizing this statutory right of refusal. In scrutinizing whether there has been an express prohibition of self-government power, we ignore the fundamental inconsistency between the Missoula ordinances and the State’s implied consent laws. The exercise of a statutory right cannot be punished as a misdemeanor.
¶41 Article XI, Section 6 of the Montana Constitution provides that “[a] local government unit adopting a self-government charter may exercise any power not prohibited by this constitution, law, or charter.” The “shared powers” concept of Article XI, Section 6
“does not leave the local unit free from state control; it does, however, change the basic assumption concerning the power of local government. At present [i.e., in 1972], th[e] assumption is that local government lacks power unless it has been specifically *459 granted. Under the shared powers concept, the assumption is that local government possesses the power, unless it has been specifically denied.”
Am. Cancer Socy. v. State, 2004 MT 376, ¶ 9, 325 Mont. 70, 103 P.3d 1085 (quoting Montana Constitutional Convention, Comments on Local Government Committee Proposal, Feb. 19, 1972, p. 797) (emphases in the original Committee Comments).
¶42 Although we have stated that all prohibitions must be express, D & F Sanitation Serv. v. City of Billings, 219 Mont. 437, 445, 713 P.2d 977, 982 (1986), the limitations on self-government authority extend beyond the express prohibitions contained in § 7-1-111, MCA (“A local government unit with self-government powers is prohibited from exercising the following: ... .”); § 7-1-112, MCA (“A local government with self-government powers is prohibited the exercise of the following powers unless the power is specifically delegated by law: ... .”); and other statutory provisions expressly prohibiting local authority. Importantly, self-government authority may be limited not only by these express statutory prohibitions, but also where it is “inconsistent” or “in conflict” with constitutional or statutory provisions. Indeed, the Legislature recognized limitations to self-government authority based on inconsistencies with state law when it enacted § 7-1-113, MCA:
(1) A local government with self-government powers is prohibited the exercise of any power in a manner inconsistent with state law or administrative regulation in any area affirmatively subjected by law to state regulation or control.
(2) The exercise of a power is inconsistent with state law or regulation if it establishes standards or requirements which are lower or less stringent than those imposed by state law or regulation.
(3) An area is affirmatively subjected to state control if a state agency or officer is directed to establish administrative rules governing the matter or if enforcement of standards or requirements established by statute is vested in a state officer or agency.
Further, and more specific to the instant proceedings, § 61-8-103, MCA, requires uniformity throughout the state with respect to. the regulation of impaired drivers:
The provisions of this chapter shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein and no local authority shall enact or enforce any ordinance, rule, or regulation in conflict with the *460 provisions of this chapter unless expressly authorized herein. Local authorities may, however, adopt additional traffic regulations which are not in conflict with the provisions of this chapter.
¶43 Within this framework, therefore, the Court must examine Missoula’s ordinances in relation to applicable provisions of law. It is not enough merely to look for an express prohibition and, upon finding none, conclude that the ordinances are a valid exercise of the City’s authority. To be valid, the ordinances may not be inconsistent with Montana’s Constitution, the United States Constitution, or the laws of either jurisdiction.
¶44 Montana law permits law enforcement to administer two separate breath tests during a criminal DUI investigation. Sections 61-8-402, -409, MCA. Both sections state that a driver is considered impliedly to have consented to a test of the person’s breath when the person operates or is in actual physical control of a vehicle upon ways of this state. We have long recognized that “driving in Montana is a privilege, not a right.... If a person wishes to enjoy the benefits of this privilege, he must accept the concomitant responsibilities.” State v. Michaud, 2008 MT 88, ¶ 58, 342 Mont. 244, 180 P.3d 636.
¶45 Section 61-8-409, MCA, states that, upon particularized suspicion that a person was driving while under the influence, a peace officer may request a preliminary alcohol screening test. Pursuant to § 61-8-409(3), MCA, the officer “shall inform the person of the right to refuse the test” (emphasis added) and that the refusal will result in the suspension of the person’s driver’s license for up to one year. The express provisions of this statute thus unequivocally establish a “right to refuse the test.” Furthermore, if a person refuses the test, the test may not be given except pursuant to the provisions of §§ 61-8-402(5) and 46-5-224, MCA, requiring the issuance of a search warrant. Section 61-8-409(4), MCA. A search warrant may be issued only upon a showing of “facts sufficient to support probable cause to believe” that an offense has been committed and that evidence may be found.[1] Section 46-5-221(1), (2), MCA.
*461 ¶46 Section 61-8-402, MCA, provides for the administration of tests following the person’s arrest for DUI. While the officer is not required to inform the person of his or her right to refuse a blood or breath test, the statute expressly prohibits the officer from administering the test upon the person’s refusal: “If an arrested person refuses to submit to one or more tests requested and designated by the officer ..., the refused test or tests may not be given except” pursuant to a validly issued search warrant. Section 61-8-402(4), MCA. Thus, §§ 61-8-402 and -409, MCA, both recognize a right of refusal.
¶47 This Court has consistently recognized the statutorily created right of a person to refuse a test. In State v. Turbiville, 2003 MT 340, 318 Mont. 451, 81 P.3d 475, we explained that “the option to refuse a breath or blood test is not a matter of due process, but a matter of grace bestowed by the Legislature.” Turbiville, ¶ 16 (discussing § 61-8-402, MCA, and citing City of Helena v. Barrett, 245 Mont. 35, 37, 798 P.2d 544, 545 (1990)). In Nichols v. Department of Justice, 2011 MT 33, 359 Mont. 251, 248 P.3d 813, we observed that “Montana’s statutory right of refusal affords arrested intoxicated drivers even greater protections from self-incrimination than required either by the United States or Montana Constitution.” Nichols, ¶ 16 (emphasis added) (citing South Dakota v. Neville, 459 U.S. 553, 565, 103 S. Ct. 916, 923 (1983), and Turbiville, ¶ 16).
¶48 The above-referenced statutes are consistent with fundamental principles underlying the Fourth Amendment. This provision, which states that “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause,” would be meaningless if a person could not refuse a warrantless intrusion. Citizens have the right to insist that a peace officer obtain authorization from a “neutral and detached magistrate” before the officer may take a blood sample; the requirement to obtain a warrant “before allowing a law enforcement officer to invade another’s body in search of evidence of guilt is indisputable and great.” Missouri v. McNeely, 133 S. Ct. 1552,1558 (2013) (internal quotation marks omitted).
¶49 Accordingly, the statutory right to refuse a test is not only embedded in Montana’s implied consent laws and warrant requirement, but is also consistent with fundamental principles underlying the Fourth Amendment and a citizen’s right to say “no” to a warrantless invasion of their person. The exercise of a right expressly created by the State’s implied consent laws, recognized by this Court’s *462 precedents, and premised upon fundamental Fourth Amendment principles cannot be the basis for punishment by the City of Missoula as a misdemeanor. Mont. Const, art. XI, § 6; § 61-8-103, MCA. The City’s ordinances directly conflict with these statutory and constitutional provisions by penalizing a person for exercising a right to refuse a warrantless test. I therefore believe the Court errs in holding that the ordinances are valid.
¶50 Nevertheless, because Armitage failed to present any credible evidence that she was coerced into providing a breath sample by the threat of prosecution under the ordinances, I agree with the denial of her motion to suppress. I therefore specially concur.
JUSTICE SHEA joins the Special Concurrence of JUSTICE McKINNON.

 In practice, a peace officer possessing probable cause to believe that a driver is impaired would not apply for a warrant to administer a preliminary alcohol screening test because the results are generally inadmissible in a criminal proceeding. See State v. Lozon, 2012 MT 303, ¶ 14, 367 Mont. 424, 291 P.3d 1135; State v. Weldele, 2003 MT 117, ¶¶ 57-58, 315 Mont. 452,69 P.3d 1162. The officer would simply apply for a warrant to administer an Intarilizer or blood test pursuant to § 61-8-402, MCA.