No. 98-602

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 82

299 Mont. 165

998 P. 2d 544

STATE OF MONTANA,

Plaintiff and Respondent,

v.

ERIC ADAM DIXON,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

Honorable Mike Salvagni, Judge Presiding

COUNSEL OF RECORD:

**For Appellant:**

Anne H. Watson, Watson Law Office, Bozeman, Montana

**For Respondent:**

Honorable Joseph P. Mazurek, Attorney General; Mark Mattioli,

Assistant Attorney General, Helena, Montana

Marty Lambert, County Attorney; Robert Brown, Deputy

County Attorney, Bozeman, Montana

_____

Submitted on Briefs: November 4, 1999

Decided: April 4, 2000

Filed:

_____

Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1.Eric Adam Dixon appeals from an order of the Eighteenth Judicial District Court, Gallatin County, denying his Motion to Dismiss. We affirm.

¶2.The issues on appeal are as follows:

¶3.a Whether the District Court erred in concluding that § 45-8-335, MCA, which defines the offense of "Possession of explosives," does not violate Due Process?

¶4.b Whether the District Court erred in concluding that the Amended Information did not place Dixon in double jeopardy?

FACTUAL BACKGROUND

¶5.The State's Affidavit of Probable Cause filed on May 29, 1997, contained the following allegations. On May 18, 1997, two motorists informed the police by cell phone that they had witnessed three males blow up a road sign and described the vehicle in which the three men were traveling. The motorists stated that they had almost been hit with shrapnel

caused by the explosion. Gallatin County Sheriff's Deputies subsequently stopped a vehicle matching the description given by the witnesses. The driver of the car was identified as Eric Dixon. Dixon later admitted to the police that he had made the pipe bomb using blasting powder, a cannon fuse, and pipe caps.

¶6. On June 4, 1997, the State of Montana charged Dixon with the following crimes: (1) Criminal Endangerment, a felony, in violation of § 45-5-207, MCA; (2) Possession of a Destructive Device, a felony, in violation of § 45-8-334, MCA; and (3) Criminal Mischief, a misdemeanor, in violation of § 45-6-101, MCA. Dixon entered a plea of not guilty to all charges on June 6, 1997.

¶7. On July 7, 1997, the State filed a Motion for Leave to File Amended Information which the court subsequently granted. The State filed an Amended Information on August 6, 1997, in which it charged Dixon with the following crimes: (1) the State dropped the Criminal Endangerment charge to Negligent Endangerment, a misdemeanor, in violation of § 45-5-208, MCA; (2) the State changed the Possession of a Destructive Device charge to Possession of Explosives, a felony, in violation of § 45-8-335, MCA; and (3) the State maintained the Criminal Mischief charge, a misdemeanor, in violation of § 45-6-101, MCA. Dixon entered a plea of not guilty to all counts.

¶8. On December 1, 1997, Dixon filed a Motion to Dismiss the charges against him as stated in the Amended Information. Dixon contended that the charge of possession of explosives was unconstitutional because it was overbroad and vague. Dixon also contended that the State placed him in double jeopardy by charging him with the three offenses contained in the Amended Information. The motion was briefed by both sides and the court received oral argument on the matter on January 28, 1998. The District Court subsequently denied Dixon's Motion to Dismiss by Order dated April 24, 1998.

¶9. On May 11, 1998, pursuant to a plea bargain with the State, Dixon withdrew his previous plea and entered a plea of guilty to the charge of possession of explosives. The court granted the State's motion to dismiss Counts 1 and 3 of the Amended Information and noted that Dixon had preserved his right to appeal. The District Court issued an Order Deferring Imposition of Sentence with Conditions on July 8, 1998. The court deferred Dixon's sentence for Possession of Explosives for two years subject to certain conditions, including the completion of a short jail term and a fine. Dixon appeals the court's denial of his Motion to Dismiss.

## STANDARD OF REVIEW

¶10.The denial of a motion to dismiss in a criminal case is a conclusion of law which we review to determine whether it was correct. *See State v. Weaver*, 1998 MT 167, ¶ 43, 290 Mont. 58, ¶ 43, 964 P.2d 713, ¶ 43.

## ISSUE ONE

¶11.Whether the District Court erred in concluding that § 45-8-335, MCA, which defines the offense of "Possession of explosives," does not violate Due Process?

¶12.Dixon contends that § 45-8-335, MCA (Possession of Explosives) is facially unconstitutional because it is vague and overbroad. Dixon also contends that the possession of explosives prohibition is unconstitutionally vague as applied.

¶13.Section 45-8-335, MCA, provides, in relevant part:

(1) A person commits the offense of possession of explosives if he possesses . . . an explosive compound . . . and:

(a) has the purpose to use such explosive . . . to commit an offense . . . .

¶14.We presume that all statutes are constitutional. It is the duty of courts, if possible, to construe statutes in a manner that avoids unconstitutional interpretation. When the constitutionality of a statute is challenged, the party making the challenge bears the burden of proving, beyond a reasonable doubt, that the statute is unconstitutional. Any doubt is to be resolved in favor of the statute. A vagueness challenge to a statute or ordinance may be raised on two different bases: (1) because the statute or ordinance is so vague that it is rendered void on its face; or (2) because it is vague as applied in a particular situation. *See State v. Stanko*, 1998 MT 321, ¶¶ 15-17, 292 Mont. 192, ¶¶ 15-17, 974 P.2d 1132, ¶¶ 15-17 (citations omitted) [*Stanko I*].

¶15.A. Whether § 45-8-335, MCA, is unconstitutional on its face?

¶16.Dixon contends that § 45-8-335, MCA, is so vague as to be void on its face because the definition of "explosives" is not contained in the criminal code. Dixon believes that the lack of a definition of "explosives" in the Montana Code fails to give § 45-8-335, MCA, the requisite constitutional specificity. Dixon also contends that the statute is

unconstitutionally overbroad because the phrase with "the purpose . . to commit an offense" sweeps so broadly that it can literally be applied to very minor offenses.

¶17.The State asserts that under our decision in *State v. Lancione*, 1998 MT 84, ¶ 28, 288 Mont. 228, ¶ 28, 956 P.2d 1358, ¶ 28, Dixon does not have standing to challenge the statute as overbroad or facially vague because the statute does not reach constitutionally protected conduct and because Dixon's conduct clearly falls within its scope. According to the State, blowing up public property in a manner which endangers public safety is at the heart of the statute's proscriptions.

¶18.Dixon must have standing to raise a facial challenge to a statute for vagueness or overbreadth. *See Lancione*, ¶ 28. As the Supreme Court has described it:

In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc. (1982), 455 U.S. 489, 494-95, 102 S. Ct. 1186, 1191, 71 L. Ed. 2d 362, 369 (cited with approval in State v. Lilburn (1994), 265 Mont. 258, 270, 875 P.2d 1036, 1044 ).*

¶19.Accordingly, we must first determine whether the statute is overbroad in that it reaches a substantial amount of constitutionally protected conduct. In this regard, we note that Dixon has not pointed us to *any* constitutionally protected conduct which a prohibition on the possession of an explosive compound for the purpose of using that explosive to commit an offense might reach: Dixon does not contend that either the United States Constitution or the Montana Constitution guarantees him the right to manufacture and possess pipe bombs. Moreover, we cannot imagine how a prohibition against the possession of explosives for the purpose of committing an offense might reach a substantial amount of constitutionally protected conduct.

¶20.A law which does not reach constitutionally protected conduct and therefore satisfies

the overbreadth test may nevertheless be challenged on its face as unduly vague in violation of due process. We have previously stated that a statute is void on its face if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden. *See State v. Nye* (1997), 283 Mont. 505, 513, 943 P.2d 96, 101. If the challenged statute is "reasonably clear in its application to the conduct of the person bringing the challenge, it cannot be stricken for vagueness." *Lancione*, ¶ 28; *see also Parker v. Levy* (1974), 417 U.S. 733, 756, 94 S. Ct. 2547, 2562, 41 L. Ed. 2d 439 ("One to whose conduct the statute clearly applies may not successfully challenge it for vagueness.").

¶21.Moreover, the Legislature need not define every term it employs when constructing a statute. *See Nye*, 283 Mont. at 513, 943 P.2d at 101. The failure to include exhaustive definitions will not automatically render a statute vague on its face, so long as the meaning of the statute is clear and provides a defendant with adequate notice of what conduct is proscribed. *See Nye,* 283 Mont. at 513, 943 P.2d at 101-02.

¶22.The statute clearly applies to Dixon's conduct. Dixon pled guilty to the possession of a pipe bomb for the purpose of committing the offense of criminal mischief. Dixon concedes that he was responsible for putting blasting powder in a pipe in order to make a pipe bomb, attaching that pipe bomb to a road sign at a rural intersection, and lighting it. Section 45-8-335, MCA, prohibits the possession of "an explosive compound" with "the purpose to use such explosive . . . to commit an offense." A pipe bomb clearly falls within a reasonable understanding of the term "explosive." Intentionally destroying a "Yield" sign clearly falls within a reasonable understanding of the phrase with "the purpose to . . . commit an offense." A reasonable person of average intelligence would have clearly understood that using a pipe bomb to destroy public property falls within the scope of the statute.

¶23.We conclude that Dixon does not have standing to make a facial challenge to the possession of explosives statute. Dixon's overbreadth challenge must fail because he has not met his burden of proving beyond a reasonable doubt that § 45-8-335, MCA, reaches a substantial amount of constitutionally protected conduct. Dixon's facial vagueness challenge must fail because § 45-8-335, MCA clearly proscribes the blowing up a "Yield" sign with a homemade pipe bomb.

¶24.B. Whether § 45-8-335, MCA, is unconstitutionally vague as applied to Dixon's conduct?

¶25.Dixon contends that the "Possession of explosives" statute is vague as applied to him because of the broad definition of "explosives" as well as the inclusion of both misdemeanor and felony offenses in the definition of "an offense." Dixon asserts that as a result of the broad definition of these terms, felony possession of explosives is completely subsumed within the misdemeanor "Reckless or malicious use of explosives" prohibited in § 45-8-333, MCA

¶26.The State contends that the legislature clearly intended "an offense" to include both misdemeanor and felony offenses. The State asserts that the statute is not vague as applied to Dixon's conduct because Dixon blew up a traffic sign with a pipe bomb which fired shrapnel at witnesses and the other offenses which Dixon was charged with were not minor offenses. Lastly, the State argues that the felony offense of possession of explosives is not completely subsumed within the misdemeanor offense of reckless or malicious use of explosives, and that even if the two statutes can conceivably cover the same conduct, there is no authority for the proposition that, therefore, one of them is necessarily vague.

¶27.We have previously observed that:

[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of the vagueness doctrine "is not actual notice, but the other principal element of the doctrine-the requirement that a legislature establish minimal guidelines to govern law enforcement." Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections."

*Stanko I, ¶ 21 (quoting Kolender v. Lawson (1983), 461 U.S. 352, 357-58, 103 S. Ct. 1855, 1858, 75 L. Ed. 2d 903, 909). As is evident from the above quotation, a void for vagueness analysis has two elements: (1) actual notice to citizens; and (2) minimal guidelines to govern law enforcement.*

¶28.In determining whether a statute provides actual notice to citizens, we must determine whether the statute gives a person of ordinary intelligence fair notice that their contemplated conduct is forbidden. *See Stanko I*, ¶ 22 (citing *State v. Woods* (1986), 221 Mont. 17, 22, 716 P.2d 624, 627). A statute challenged for vagueness as applied to a

particular defendant must be examined in light of the conduct with which the defendant is charged in order to determine whether the defendant could have reasonably understood that his conduct was proscribed. *See State v. Stanko*, 1998 MT 323, ¶ 58, 292 Mont. 214, ¶ 58, 974 P.2d 1139, ¶ 58 [*Stanko II*].

¶29.Therefore, the issue is not, as Dixon contends, whether the statute fails to put a reasonable person on notice that the act of committing any offense with any type of explosive device constitutes a felony punishable by up to 20 years in the Montana State Prison. Rather, the issue is whether Dixon could have reasonably understood that the statute proscribed *his* conduct-destroying a "Yield" sign with a pipe bomb. As we discussed above in addressing Dixon's facial challenge to the statute, Dixon could have reasonably understood that his conduct was proscribed. We conclude that the statute gave Dixon actual notice.

¶30.The second element of a void for vagueness as applied analysis requires us to determine whether the legislature established minimal guidelines to govern law enforcement. As we have stated previously:

[L]aws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Stanko I, ¶ 23 (quoting Grayned v. City of Rockford (1972), 408 U.S. 104, 108-09, 92 S. Ct. 2294, 2298-99, 33 L. Ed. 2d 222, 227-28).*

¶31.Once again, because this is a challenge to the constitutionality of the statute *as applied*, we must determine whether the law provides sufficient guidelines to prevent arbitrary and discriminatory enforcement with regard to Dixon's conduct. In this regard, Dixon contends that because of the broad definition of "explosive" and "offense" his conduct could have fallen under either the misdemeanor statute, § 45-8-333, MCA, (Reckless or Malicious Use of Explosives), or the felony statute § 45-8-335, MCA (Possession of Explosives).

¶32.Section 45-8-335, MCA, states that possession of "an explosive compound" with "the purpose to use such explosive . . . to commit an offense" is a felony. "Offense" is defined as "a crime for which a sentence of death or of imprisonment or a fine is authorized. Offenses are classified as felonies or misdemeanors." Section 45-2-101(48), MCA. As

Dixon demonstrates in his brief, the term "explosive" is defined with reference to the Uniform Fire Code. *See* Rule 23.7.301(1), ARM. Section 206-E of the Uniform Fire Code defines explosive as:

1. A chemical that causes a sudden, almost instantaneous release of pressure, gas and heat when subjected to sudden shock, pressure, or high temperatures, or

2. A material or chemical, other than a blasting agent, that is commonly used or intended to be used for the purpose of producing an explosive effect and is regulated by Article 77.

¶33. On the other hand, Section 45-8-333, MCA, provides:

Every person who shall recklessly or maliciously use, handle, or have in his or her possession any blasting powder, giant or Hercules powder, giant caps, or other highly explosive substance whereby any human being is intimidated, terrified, or endangered shall be guilty of a misdemeanor.

¶34. Dixon contends that the felony "possession of explosives" statute is completely subsumed within the misdemeanor "reckless or malicious use of explosives" statute and that thus either can be charged at the whim of the arresting officer or prosecutor. We disagree. Section 45-8-333, MCA, proscribes the possession of blasting powder whereby any human being is intimidated, terrified, or endangered. Section 45-8-335, MCA, proscribes the possession of an explosive compound with the purpose to use such explosive to commit an offense. Dixon pled guilt to possessing a pipe bomb with the purpose of using that pipe bomb to blow up a "Yield" sign. His conduct clearly falls within the proscriptions of the felony possession charge. The fact that the prosecutor could have also charged Dixon with reckless or malicious use of explosives because there happened to be two witnesses who were intimidated or endangered by his conduct does not render § 45-8-335, MCA, unconstitutionally vague as applied.

¶35. We note that Dixon cites no legal authority for the proposition that because a defendant could have also been charged with a lesser offense, the statute he was charged with violating is therefore unconstitutionally vague as applied. Furthermore, this proposition would fly in the face of years of historical practice. As Dixon acknowledges, a person charged with burglary could also be charged with the lesser included offense of criminal trespass to property. *Compare* § 45-6-204, MCA (prohibiting the unlawful presence in an occupied structure with the purpose to commit an offense therein); *with* §

45-6-203, MCA (prohibiting the unlawful presence in an occupied structure). Surely, a person who broke into an occupied house for the purpose of committing a theft could not contend that the burglary statute was unconstitutionally vague as applied to her conduct because she could have been charged with criminal trespass.

¶36. We conclude that § 45-8-335 is not unconstitutionally vague as applied to Dixon's conduct.

## ISSUE TWO

¶37. Whether the District Court erred in concluding that the Amended Information did not place Dixon in double jeopardy?

¶38. The basis of Dixon's double jeopardy claims is that the State charged him with three crimes arising out of one single incident. Dixon requests that we adopt the "same conduct" test announced in *Grady v. Corbin* (1990), 495 U.S. 508, 110 S. Ct. 2084, 109 L. Ed. 2d 548, *overruled by United States v. Dixon* (1993), 509 U.S. 688, 113 S. Ct. 2849, 125 L. Ed. 2d 556, as the test of double jeopardy under Article II, Section 25 of the Montana Constitution. Dixon also asserts that the Amended Information violates § 46-11-410(2)(b), MCA (Multiple Charges), because the charge of possession of explosives is a crime of preparation.

¶39. The State contends that Dixon's decision to plead guilty to one offense, in exchange for the dismissal of the others, renders his claim of double jeopardy moot because although Dixon was charged with multiple offenses, which is constitutionally permissible, he never received multiple punishments nor was he subjected to successive prosecutions. In regard to Dixon's contention that the Amended Information violated § 46-11-410(2)(b), the State argues that under *State v. Wolfe* (1991), 250 Mont. 400, 821 P.2d 339, we allowed a conviction for both possession of explosives and criminal mischief. Moreover, unlike the defendant in *Wolf*, the State observes that although Dixon was charged with both possession of explosives and criminal mischief, he only pled guilty to the possession of explosives count-the other counts were dismissed.

¶40. The District Court concluded that under *Blockburger v. United States* (1932), 284 U. S. 299, 52 S. Ct. 180, 76 L. Ed. 306, the Amended Information did not violate Dixon's right not to be placed in double jeopardy because each offense charged required proof of a fact which the other offenses did not. The court refused to apply the analysis of *Grady*

because it concluded that *Grady* was only relevant to a situation involving successive prosecutions based upon the same conduct and involving the same facts.

¶41.A. Whether the Amended Information violated Dixon's constitutional right not to be placed in double jeopardy?

¶42.The federal prohibition against double jeopardy is found in the Fifth Amendment and is made applicable to the states through the Fourteenth Amendment. Article II, Section 25 of the Montana Constitution also prohibits the State from placing a defendant in double jeopardy. Montana's prohibition against double jeopardy protects defendants from both multiple prosecutions for offenses arising out of the same transaction and multiple punishments imposed at a single prosecution for the same offense. *See State v. Savaria* (1997), 284 Mont. 216, 222, 945 P.2d 24, 28.

¶43.Regarding multiple punishments, we have held that the double jeopardy prohibition contained in the Montana Constitution provides greater protection for multiple punishments for the same offense than the Fifth Amendment. *See State v. Guillaume*, 1999 MT 29, ¶ 16, 293 Mont. 224, ¶ 16, 975 P.2d 312, ¶ 16. In *Guillaume*, we held that application of a weapon enhancement statute to a felony conviction where the underlying offense required proof of the use of a weapon violated the double jeopardy provision of Article II, Section 25 of the Montana Constitution. *Guillaume*, ¶ 16. We noted that the only fact which raised Guillaume's misdemeanor charge to a felony assault charge was the use of a weapon. Thus, when the weapon enhancement statute was applied to Guillaume's felony assault conviction, Guillaume was subjected to double punishment for the use of a weapon: once when the charge was elevated from misdemeanor assault to felony assault, and again when the weapon enhancement statute was applied. *Guillaume*, ¶ 18.

¶44.Dixon has clearly not received multiple punishments for the same offense. Dixon pled guilty to and received a deferred sentenced on the basis of only one offense, possession of explosives in violation of § 45-8-335, MCA. Moreover, unlike Guillaume, Dixon's sentence was not enhanced on the basis of a factor for which he had already received punishment. Consequently, Dixon's right not to receive multiple punishments for the same offense has not been abridged.

¶45.Montana's prohibition against double jeopardy also protects defendants from multiple prosecutions. *See Savaria*, 284 Mont. at 222, 945 P.2d at 28. We have observed that the constitutional prohibition against multiple prosecutions protects citizens from subsequent

prosecutions for the same offense after acquittal or conviction. *See State v. Anderson*, 1998 MT 258, ¶ 21, 291 Mont. 242, ¶ 21, 967 P.2d 413, ¶ 21.

¶46.Dixon has not been subjected to multiple prosecutions for the same offense. He was not previously acquitted or convicted of any of the charges contained in the Amended Information. Consequently, Dixon's right not to be subjected to multiple prosecutions for the same offense has not been abridged.

¶47.B. Whether the Amended Information violated § 46-11-410(2), MCA?

¶48.Section 46-11-410, MCA, provides, in relevant part,

**Multiple charges. (1) When the same transaction may establish the commission of more than one offense, a person charged with the conduct may be prosecuted for each offense.**

(2) A defendant may not, however, be convicted of more than one offense if:

. . . .

(b) one offense consists only of a conspiracy or other form of preparation to commit the other.

¶49.Section 46-11-410(1), MCA, expressly allows a person to be charged with and prosecuted for multiple offenses arising out of the same transaction. Subparagraph two prohibits the State from *convicting* a defendant of more than one offense if one offense consists only of a form of preparation to commit the other. Dixon was not convicted of multiple offenses. We conclude that the State did not violate § 46-11-410, MCA.

¶50.We conclude that the District Court did not err when it determined that Dixon was not placed in double jeopardy. Dixon's constitutional right to be free from multiple punishments or multiple prosecutions for the same offense was not violated by the Amended Information. The State also did not violate § 46-11-410, MCA. Section 46-11-410, MCA, does not prohibit the charging of multiple offenses arising out of the same transaction.

¶51.Affirmed.

/S/ JIM REGNIER

We concur:

/S/ W. WILLIAM LEAPHART

/S/ JAMES C. NELSON

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.