
DA 08-0140

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 63

CITY OF BILLINGS,

      Plaintiff and Appellee,

  v.

CHARLES EUGENE ALBERT,

      Defendant and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Thirteenth Judicial District, In and For the County of Yellowstone, Cause No. DC 07-0382 Honorable Russell C. Fagg, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

            Elizabeth J. Honaker; Honaker Law Firm, Billings, Montana

      For Appellee:

            Brent Brooks, Billings City Attorney; Curtis L. Bevolden, Deputy City Attorney, Billings, Montana

Submitted on Briefs: January 28, 2009

Decided: March 3, 2009

Filed:

_____
                       Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Charles Eugene Albert (Albert) appeals from an order of the Thirteenth Judicial District Court, Yellowstone County, affirming his conviction and sentence on two charges of storage of salvage by the Municipal Court of the City of Billings.  We affirm.

¶2    Albert presents the following issues for review:

¶3    Whether Billings Municipal City Code (BMCC) 27-601(g) is unconstitutionally vague as applied to Albert.

¶4    Whether Albert was denied effective assistance of counsel.

¶5    Whether the Municipal Court erred in denying Albert's motion to dismiss for insufficient evidence.

¶6    Whether the District Court erred in determining Albert's sentence was legal.

## BACKGROUND

¶7    Albert owns a residence on South 26th Street in Billings, Montana.  On September 1, 2005 and September 22, 2006, Billings Code Enforcement Officer Don Vegge (Vegge) charged Albert with storage of salvage, in violation of BMCC 27-601(g).  A jury trial on both counts was held in Municipal Court on March 28, 2007.

¶8    Counsel for the City of Billings (City) presented testimony from Vegge and two other City Code Enforcement Officers in its case in chief.  The witnesses testified regarding complaints received from Albert's neighbors, their repeated attempts to work with Albert to clean up his property, and the facts surrounding issuance of the two

2

citations. Numerous photographs depicting Albert's property were also admitted as evidence.

¶9 Albert was represented by counsel. Albert did not testify and his counsel presented no case in chief. Albert's counsel moved for a directed verdict of acquittal at the close of the City's case.[1] Judge Colette B. Davies denied the motion.

¶10 The jury found Albert guilty on both charges. Judge Davies sentenced Albert to six months in jail and a $500 fine, all suspended, on each count. The conditions for suspension were that Albert clean up his property to the satisfaction of the Code Enforcement Division by April 30, 2007, and that he receive regular treatment from Dr. Van Dyke and take his medication as prescribed. Albert appealed to the District Court, which affirmed his convictions and sentence. Albert appeals the District Court decision.

## STANDARD OF REVIEW

¶11 Statutes enjoy a presumption of constitutionality. *State v. Knudson*, 2007 MT 324, ¶ 12, 340 Mont. 167, 174 P.3d 469. The person challenging a statute's constitutionality bears the burden of proving it unconstitutional. *Knudson*, ¶ 12. The constitutionality of a statute is a question of law. *Knudson*, ¶ 12. We review the district court's application of the Constitution to determine if it is correct. *Knudson*, ¶ 12. Our review of constitutional questions is plenary. *Knudson*, ¶ 12.

---

[1] We deem Albert's motion as a motion to dismiss for insufficient evidence made pursuant to § 46-16-403, MCA, and apply the same standard of review as previously used for motions for a directed verdict of acquittal. *See State v. McWilliams*, 2008 MT 59, ¶ 36, 341 Mont. 517, 178 P.3d 121; *State v. Rosling*, 2008 MT 62, ¶ 21 n. 2, 342 Mont. 1, 180 P.3d 1102.

¶12    Ineffective assistance of counsel claims are mixed questions of fact and law that we review de novo. *State v. Herrman*, 2003 MT 149, ¶ 18, 316 Mont. 198, 70 P.3d 738.

¶13    A motion to dismiss for insufficient evidence (formerly a motion for a directed verdict of acquittal) is appropriate in a criminal trial if, viewing the evidence in a light most favorable to the prosecution, "no evidence exists upon which a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." *State v. Bomar*, 2008 MT 91, ¶ 13, 342 Mont. 281, 182 P.3d 47; *State v. Swann*, 2007 MT 126, ¶ 16, 337 Mont. 326, 160 P.3d 511; *see* § 46-16-403, MCA. We review a district court's denial of such a motion de novo, because evidence is either sufficient or it is not. *Bomar*, ¶ 13; *Swann*, ¶¶ 16-19.

¶14    We review a criminal sentence for legality only. *State v. Legg*, 2004 MT 26, ¶ 24, 319 Mont. 362, 84 P.3d 648.

**DISCUSSION**

¶15    *Whether Billings Municipal City Code (BMCC) 27-601(g) is unconstitutionally vague as applied to Albert.*

¶16    A criminal statute is unconstitutionally vague if "a person is required to speculate as to whether his contemplated course of action may be subject to criminal penalties." *State v. Mainwaring*, 2007 MT 14, ¶ 18, 335 Mont. 322, 151 P.3d 53. Both the United States Constitution and the Montana Constitution protect against vague statutes that infringe a citizen's right to due process. U.S. Const. amend. XIV, § 1; Mont. Const. art. II, § 17. The void for vagueness doctrine "requires that a penal statute define the criminal

4

offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Knudson*, ¶ 18 (quoting *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 1858 (1983)).

¶17 Relying on the United States Supreme Court's reasoning in *Kolender*, this Court developed a two-part test to determine whether a statute is unconstitutional as applied to a particular situation. *State v. Dixon*, 2000 MT 82, ¶ 27, 299 Mont. 165, 998 P.2d 544. First, we consider whether actual notice was given to citizens. *Dixon*, ¶ 27. Second, we ask whether the statute contains minimal guidelines sufficient to govern law enforcement. *Dixon*, ¶ 27.

¶18 Albert argues that BMCC 27-601(g) is unconstitutionally vague as applied to him, infringing on his right to due process. Albert contends that the substantive terms in the municipal ordinance are not defined, thus the ordinance failed to provide actual notice of what conduct was proscribed and failed to provide minimal guidelines sufficient to govern City Code Enforcement Officers. In essence, Albert claims that there is no reasonable way to ascertain from the ordinance what property cannot legally remain in his yard for over five days.

¶19 The pertinent part of BMCC 27-601(g) reads, "[p]ermanent open storage of salvage, inoperable vehicles, rubbish or other chattel shall not be permitted in any zoning district." The ordinance defines "permanent storage" as "storage of chattel, salvage, rubbish or junk for a period exceeding five (5) days without moving." BMCC 27-601(a).

5

"Open storage" is defined as "the storage for a period of five (5) days or more of an unlicensed or inoperable vehicle, appliance, implement or machinery, or any part thereof, outside of an enclosed structure." BMCC 27-601(a). Albert argues that inconsistencies between these two definitions make understanding what constitutes "permanent open storage" unconstitutionally vague.

¶20    Additional definitions in the Billings Municipal City Code diminish these claimed inconsistencies. In particular, "junk" is defined as:

> any worn out, cast off or discarded article or material which is ready for destruction or has been collected or stored as salvage, for conversion to some other use or for reduction into components. Junk includes but is not limited to old or scrap brass, rope, rags, batteries, paper, tires, rubber debris or waste, iron, steel and other old or scrap ferrous or non-ferrous material.

BMCC 27-601(a). This definition was provided to the jury. When viewed as a whole, BMCC 27-601(g) is thus increasingly specific on its face.

¶21    There was nothing vague about how the ordinance was applied to Albert. Albert received multiple warnings by City Code Enforcement Officers before he was cited for violating the ordinance. Officer Vegge described at trial how he visited Albert on several occasions in response to complaints received from neighbors. Vegge explained what items needed to be removed and even offered to assist in removal efforts. Vegge testified as to the following items, which he considered trash, debris, junk or garbage in Albert's yard: all kinds of bicycle parts and tire rims hanging on the house or in trees; piles of junk wood that could not be used; plastic and metal containers, some rusted or covered in dust and debris; metal barrels; lots of cardboard boxes strewn around, both empty and full

6

of garbage or food; a trailer; car batteries; ladders against the house; an old umbrella; lots of things in piles or covered by a tarp; and other items hanging off the house. Clearly these items are within the meaning of BMCC 27-601(g). Vegge's warnings constituted actual notice to Albert of what was required for him to comply with the ordinance.

¶22 Having concluded that Albert was given actual notice of what he was required to remove from his yard, the remaining question under the *Dixon* test is whether the ordinance contains minimal guidelines sufficient to govern law enforcement "in a manner that does not encourage arbitrary and discriminatory enforcement." *Dixon*, ¶ 27 (quoting *Kolender*, 461 U.S. at 357, 103 S. Ct. at 1858). Officer Vegge described how the City Code Enforcement Division enforces BMCC 27-601(g) at trial. Enforcement is complaint generated. This avoids "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." *Dixon*, ¶ 27 (quoting *Kolender*, 461 U.S. at 358, 103 S. Ct. at 1858). The City's enforcement process does not encourage arbitrary and discriminatory enforcement because officers only respond to citizen complaints. Furthermore, a certain degree of subjective judgment is inherent in many criminal statutes. For example, subjective judgment is required to determine what constitutes "careful and prudent" driving when enforcing § 61-8-302, MCA, prohibiting careless driving. Similarly, § 45-8-101, MCA, prohibiting disorderly conduct requires subjective judgment to determine what conduct "disturbs the peace." Likewise, the minimal guidelines provided by BMCC 27-601(g) are sufficient to govern law enforcement.

7

¶23 Since Albert has not proven BMCC 27-601(g) unconstitutional, we conclude that the District Court was correct in determining that BMCC 27-601(g) was not unconstitutionally vague as applied to Albert.

¶24 *Whether Albert was denied effective assistance of counsel.*

¶25 Albert claims that he was denied effective assistance of counsel in his defense, on the grounds that his counsel presented no case in chief, did not call Albert as a witness to testify, and failed to present any pretrial motions to the City Court challenging the constitutionality of BMCC 27-601(g).

¶26 We have discussed our approach to ineffective assistance of counsel claims on many occasions:

> The right to effective assistance of counsel is guaranteed by the Sixth Amendment to the United States Constitution, as incorporated through the Fourteenth Amendment, and by Article II, Section 24 of the Montana Constitution. This Court has adopted the two-pronged test of *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, in judging ineffective assistance of counsel claims. *Sellner v. State*, 2004 MT 205, 322 Mont. 310, 95 P.3d 708. The defendant must demonstrate that (1) "counsel's performance was deficient or fell below an objective standard of reasonableness," *State v. Turnsplenty*, 2003 MT 159, ¶ 14, 316 Mont. 275, ¶ 14, 70 P.3d 1234, ¶ 14 (citing *State v. St. John*, 2001 MT 1, ¶ 37, 304 Mont. 47, ¶ 37, 15 P.3d 970, ¶ 37); and (2) "establish prejudice by demonstrating that there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Turnsplenty*, ¶ 14 (citing *State v. Harris*, 2001 MT 231, ¶ 19, 306 Mont. 525, ¶ 19, 36 P.3d 372, ¶ 19). The first prong carries a strong presumption in favor of the State, as counsel is allowed wide latitude in deciding what tactics she should, and should not, employ in defending her client. *See State v. Jefferson*, 2003 MT 90, ¶ 48, 315 Mont. 146, ¶ 48, 69 P.3d 641, ¶ 48.

*State v. Kougl*, 2004 MT 243, ¶ 11, 323 Mont. 6, 97 P.3d 1095. We have also noted that:

8

> [I]t is entirely possible within the framework of *Strickland* to find attorney error which possibly prejudiced the defendant, yet conclude that such error did not rise to a level serious enough to result in a verdict unworthy of confidence. . . . The burden on the defendant under *Strickland* is a heavy one. The defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," while also showing that counsel's deficient performance was so prejudicial that he was denied a fair trial.

*State v. Hagen*, 2002 MT 190, ¶ 23, 311 Mont. 117, 53 P.3d 885 (quoting *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064).

¶27 Applying the first prong of the *Strickland* test, we find that Albert's counsel was reasonably effective. The City presented overwhelming evidence against Albert at trial, including photographs of his yard taken at the time of both citations and testimony by three City Code Enforcement Officers. Nonetheless, Albert's counsel was effective in voir dire and cross examination. During cross examination, Albert's counsel vigorously questioned the City's proof that the salvage was permanent, i.e. had not moved for over five days. This strategy formed the basis of his unsuccessful motion to dismiss for inefficient evidence. As noted above, "counsel is allowed wide latitude in deciding what tactics [he] should, and should not, employ in defending [his] client." *Kougl*, ¶ 11 (citing *Jefferson*, ¶ 48).

¶28 Furthermore, under the second *Strickland* prong, we find no reasonable probability that Albert would have been acquitted had his counsel pursued a different trial strategy. We concluded above that the constitutional challenge failed. Given the overwhelming evidence against Albert, we cannot conclude that Albert's testimony would have changed

9

the results of the trial. Therefore, we hold that Albert was not denied effective assistance of counsel.

¶29 *Whether the Municipal Court erred in denying Albert's motion to dismiss for insufficient evidence.*

¶30 Albert contends that the Municipal Court abused its discretion when it denied his motion to dismiss for insufficient evidence. He claims that the evidence did not prove that the offending items in his yard were "permanent," which was defined by the ordinance as storage for longer than five days without moving. Albert now argues that the District Court erred in finding sufficient evidence to convict him.

¶31 We find that there was sufficient evidence to convict Albert. Counsel for the City asked each witness how they knew that the items remained in Albert's yard without moving for more than five days. The officers indicated that they drove by Albert's property regularly and that the condition of his yard did not improve. Photographs showed items that remained in Albert's yard a year after the first citation. The testimony of the City Code Enforcement Officers and the photographs of Albert's property were sufficient for a jury to conclude that the items remained in Albert's yard for longer than five days. We therefore conclude that the Municipal Court was correct in denying Albert's motion to dismiss for insufficient evidence.

¶32 *Whether the District Court erred in determining Albert's sentence was legal.*

¶33 Section 46-18-201(4), MCA, allows a sentencing judge to impose any reasonable conditions during the period of suspension of a sentence. Judge Davies suspended

Albert's sentence on the condition that he clean up his property to the satisfaction of the City Code Enforcement Division. Albert argues that this condition is illegal because the particular items to be removed must be specifically itemized. Otherwise, Albert claims that the sentence allows a "blanket clean up" of his property left solely to the discretion of City Code Enforcement Officers.

¶34 During trial Albert saw the photographs and heard the testimony of officers regarding the items that must be removed from his yard. Further, when Judge Davies asked him if he understood what he needed to do to become code compliant, Albert responded, "I understand what they want." The City Code Enforcement Division provided a dumpster behind Albert's property and was ordered to assist in the clean up. Albert was informed that he could either dispose of the offending items or store them inside. Nothing about the sentence or conditions is unreasonable. As the District Court noted, if the officers should act unreasonably in enforcing code compliance, Albert can seek post-conviction relief. We conclude that Albert's sentence was legal.

¶35 Affirmed.

/S/ MIKE McGRATH

We concur:

/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ JAMES C. NELSON

11