FILED

May 13 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

IN THE SUPREME COURT OF THE STATE OF MONTANA

OP 09-0168

2009 MT 163

_____

STATE OF MONTANA,

      Petitioner,

      v.

THIRTEENTH JUDICIAL DISTRICT COURT
THE HONORABLE SUSAN P. WATTERS,

      Respondent.

O P I N I O N

A N D

O R D E R

_____

¶1    On March 26, 2009, the Office of the Attorney General for the State of Montana (the State) filed with this Court a Petition for Writ of Supervisory Control over the District Court for the Thirteenth Judicial District, Yellowstone County, in Cause No. DC 2008-360. In that case, the Honorable Susan P. Watters issued an order on February 2, 2009, wherein she ruled that § 61-7-103, MCA, was unconstitutionally vague on its face and as applied. In its petition, the State requested that this Court exercise its supervisory control pursuant to M. R. App. P. 14(3) and reverse the District Court's order.

¶2    We issued an Order on March 31, 2009, ordering the District Court, or counsel for the defendant in the underlying case on behalf of the District Court, to respond to the State's petition. A response was filed by defendant's counsel on April 10, 2009.

1

¶3    Having now considered the parties' arguments, we grant the State's Petition for Writ of Supervisory Control, reverse the decision of the District Court, and remand for further proceedings consistent with this Opinion and Order.

**Issues**

¶4    1. Is the issue presented by the State appropriate for resolution by this Court through a writ of supervisory control?

¶5    2. Did the District Court err in concluding that § 61-7-103, MCA, is unconstitutionally vague on its face and as applied?

**Factual and Procedural Background**

¶6    The following factual background has been alleged by the State; is subject to proof at trial; and is not intended to establish the law of this case.

¶7    In the early morning hours of May 19, 2008, Christopher Steglich and his girlfriend, Mary Ryan, were involved in a motorcycle accident in Billings. Ryan, who had been riding on the back of the motorcycle, was fatally injured in the crash. Steglich left the scene of the accident before law enforcement officers arrived and walked to his house approximately a mile away. When he arrived home, Steglich told his friends that Ryan had been hurt, handed them the keys to his van, and asked them to go and get her. Steglich remained behind where he put his bloody clothes into the washing machine.

¶8    Steglich's friends could not find Ryan or the site of the wreck, so they returned to Steglich's house to get more specific directions. By then, Steglich was in the shower. The friends returned to where Steglich told them the accident had occurred to continue to

2

look for Ryan. When they finally located her, one of the friends ran to a nearby house, which was within sight of the accident, and obtained a phone to contact 911.

¶9 Although Steglich had a phone in his house, he did not call 911 or contact any law enforcement agency until almost twenty hours after the accident. When Steglich did finally talk with law enforcement officers, he told them that he and Ryan had been at a casino earlier in the evening where he had had several drinks. He also told officers that he had taken a "couple of hits" from a meth pipe before going to the casino, and that after returning home from the casino with Ryan prior to the accident, he had "two or three pulls" off a bottle of tequila.

¶10 The accident occurred when Steglich and Ryan left the house after 1:00 a.m. to go to Wal-Mart. Steglich told officers that Ryan was "gurgling and still alive" when he left her. He also acknowledged that she was unconscious.

¶11 The State charged Steglich with negligent homicide, a felony, in violation of § 45-5-104, MCA, and failure to stop or remain at the scene of an accident involving death or personal injuries, a felony, in violation of § 61-7-103, MCA. Steglich filed a motion to dismiss the "failure to remain" charge arguing that § 61-7-103, MCA, was unconstitutionally vague. The District Court granted Steglich's motion concluding that the statute was vague both facially and as applied to Steglich. Thereafter, the State filed its Petition for Writ of Supervisory Control with this Court. The State also filed a protective, direct appeal of the District Court's order (this Court's Cause No. DA 09-0088). The negligent homicide charge remains pending against Steglich.

**Issue 1.**

3

¶12    *Is the issue presented by the State appropriate for resolution by this Court through a writ of supervisory control?*

¶13    This Court has general supervisory control over all other courts.  Mont. Const. art. VII, § 2(2).  Supervisory control is, however, an extraordinary remedy that we exercise only in extraordinary circumstances.  *J.C. v. Eleventh Judicial Dist. Court*, 2008 MT 358, ¶ 12, 346 Mont. 357, 197 P.3d 907 (citing *Miller v. Eighteenth Judicial Dist. Court*, 2007 MT 149, ¶ 16, 337 Mont. 488, 162 P.3d 121).  We exercise supervisory control on a case-by-case basis and only when

> urgency or emergency factors exist making the normal appeal process inadequate, when the case involves purely legal questions, and when one or more of the following circumstances exist:
>         a.   The other court is proceeding under a mistake of law and is causing a gross injustice;
>         b.   Constitutional issues of state-wide importance are involved;
>         c.   The other court has granted or denied a motion for substitution of a judge in a criminal case.

M. R. App. P. 14(3).

¶14    The State argues in its Petition for Writ of Supervisory Control that the criteria required for supervisory control exist in this case because the District Court's ruling implicates constitutional issues of statewide importance and because the ruling is legally incorrect resulting in a gross injustice.  The State maintains that because there are similar cases currently pending before courts throughout Montana, the urgency requirement is also satisfied.  To that end the State points out that if other trial courts agree with the decision of the District Court in this case, then the District Court's error grows.  However, if other courts disagree with the District Court's decision, then conflicting rulings would exist throughout the State.

4

¶15 In responding to the State's petition, defendant's counsel concedes that the question here is purely legal and that this case does involve constitutional issues of state-wide importance. Defendant's counsel contends, however, that even though the State has no appeal remedy at this moment, such an appeal is possible in the future. Consequently, defendant's counsel maintains that, in this case, the normal appeal process is adequate making supervisory control inappropriate.

¶16 Section 46-20-103, MCA, limits the State to appealing orders or judgments in criminal cases that have the substantive effect of dismissing a case, modifying or changing a verdict, granting a new trial, quashing an arrest or search warrant, suppressing evidence, suppressing a confession or an admission, granting or denying a change of venue, and imposing a sentence that is contrary to law. The plain language of § 46-20-103, MCA, does not permit the State to appeal from an order that dismisses one count but leaves the case still pending. Consequently, in the instant case, the State does not have an immediate right of appeal because the District Court did not dismiss the entire case, it only dismissed one count. The negligent homicide count remains to be tried.

¶17 In addition, while defendant's counsel argues that the State could dismiss the negligent homicide count without prejudice and then appeal the dismissal of the failure-to-remain count, or appeal the dismissal of the failure-to-remain count after trial on the negligent homicide count, these solutions are impractical. The State has the right to charge a defendant with any provable crime that defendant may have committed and a defendant has the right to a speedy trial on all charges. Adopting the approach proposed

5

by defendant's counsel would unnecessarily complicate the trial process. If the State were to dismiss the negligent homicide count in order to appeal the dismissal of the failure-to-remain count, or try the defendant on the failure-to-remain count subsequent to a trial on the negligent homicide count, there could be double jeopardy and speedy trial issues. The better course is to accept supervisory control and rule on the merits of the case.

¶18 On that basis, we conclude that urgency or emergency factors do exist which make the normal appeal process inadequate; that this case involves purely legal questions as well as constitutional issues of state-wide importance; and that the District Court is proceeding under a mistake of law causing a gross injustice.

¶19 Accordingly, we assume supervisory control over this matter to consider the issue raised by the State's petition.

**Issue 2.**

¶20 *Did the District Court err in concluding that § 61-7-103, MCA, is unconstitutionally vague on its face and as applied?*

¶21 The District Court concluded that § 61-7-103, MCA, was vague on its face because the criminal intent element of the statute is based upon a reasonableness determination made by the fact-finder, thus it lacks a specified standard of conduct that is required under Montana law. The court also determined that § 61-7-103, MCA, is vague as applied to Steglich because Steglich could not have reasonably understood that returning to his home to obtain help for Ryan was prohibited, and because the statute fails

6

to provide sufficient guidelines to prevent arbitrary and discriminatory enforcement with regard to Steglich's conduct.

¶22 The State argues that the District Court erred in finding § 61-7-103, MCA, void on its face because the statute is not vague in all of its applications. The State points out that even Steglich conceded that a person could be charged with failing to remain at the scene of an accident if the person offered no assistance. The State also argues that § 61-7-103, MCA, is not vague as applied to Steglich because an ordinary person would have fair notice that the law applies to a person who leaves someone unconscious, but "gurgling and still alive," while the person walks home past several houses where he could have called 911, and gives his keys to his friends to go back to the accident scene while he launders his bloody clothes and takes a shower.

¶23 This Court presumes that all statutes are constitutional. *State v. Stanko*, 1998 MT 321, ¶ 15, 292 Mont. 192, 974 P.2d 1132. Thus, we will, if possible, construe a statute in a manner that avoids unconstitutional interpretations. *Stanko*, ¶ 15. When the constitutionality of a statute is challenged, the party challenging the statute bears the burden of proving, beyond a reasonable doubt, that the statute is unconstitutional, and any doubt will be resolved in favor of the statute. *Stanko*, ¶ 16.

¶24 A vagueness challenge to a statue may be raised on two different bases: (1) because the statute is so vague that it is rendered void on its face; or (2) because it is vague as applied in a particular situation. *Stanko*, ¶ 17. Moreover, the void-for-vagueness doctrine requires that criminal statutes define offenses with "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a

7

manner that does not encourage arbitrary and discriminatory enforcement." *State v. Samples*, 2008 MT 416, ¶ 16, 347 Mont. 292, 198 P.3d 803 (citing *State v. Turbiville*, 2003 MT 340, ¶ 18, 318 Mont. 451, 81 P.3d 475; *State v. Britton*, 2001 MT 141, ¶ 6, 306 Mont. 24, 30 P.3d 337).

### *void on its face*

¶25 A statute is "void on its face if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *State v. Dixon*, 2000 MT 82, ¶ 20, 299 Mont. 165, 998 P.2d 544 (citing *State v. Nye*, 283 Mont. 505, 513, 943 P.2d 96, 101 (1997)). A person challenging the statute bears the burden of showing that the statute is "impermissibly vague in all of its applications." *Dixon*, ¶ 18. Thus, a challenger must prove that the statute is vague " 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.' " *State v. Martel*, 273 Mont. 143, 151, 902 P.2d 14, 19 (1995) (quoting *Monroe v. State*, 265 Mont. 1, 4, 873 P.2d 230, 231 (1994)). Furthermore, " '[t]he fact that a statute is difficult to apply to some situations does not render it unconstitutionally vague.' " Martel, 273 Mont. at 151, 902 P.2d at 19 (quoting *Monroe*, 265 Mont. at 3, 873 P.2d at 231).

¶26 The statute in question here, § 61-7-103(1), MCA, requires that

> [t]he driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop the vehicle at the scene of the accident or as close to the accident as possible but shall then return to and in every event remain at the scene of the accident until the driver has fulfilled the requirements of 61-7-105.

And, § 61-7-105, MCA, provides:

8

**Duty to give information and render aid.** The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person shall give his name, address, and the registration number of the vehicle he is driving and shall upon request and if available exhibit his driver's license to the person struck or the driver or occupant of or person attending any vehicle collided with *and shall render to any person injured in such accident reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon, or hospital for medical or surgical treatment* if it is apparent that such treatment is necessary or if such carrying is requested by the injured person. [Emphasis added.]

¶27 Contrary to the District Court's conclusion, § 61-7-103, MCA, is not unconstitutionally vague on its face because it does provide persons of ordinary intelligence fair notice of the conduct it prohibits. Ordinary persons reading the statute would know that if they were involved in an accident resulting in death or injury, they should remain at the scene until they have provided information to those involved in the accident and render reasonable assistance if it appears that assistance is necessary or if the injured person requests assistance. Furthermore, § 61-7-105, MCA, provides an example of reasonable assistance: "the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon, or hospital for medical or surgical treatment . . . ."

¶28 The District Court determined that the failure-to-remain statute was unconstitutionally vague because a person's criminal liability hinged, at least in part, upon a determination of reasonableness. Contrary to the District Court's view, a criminal statute is not rendered unconstitutionally vague solely because a jury determines the reasonableness of a defendant's actions. Criminal culpability often hinges on whether a

9

jury later determines that a person acted reasonably. For example, a jury determines whether a victim's apprehension was reasonable when deciding whether a defendant has committed an assault or stalking offense based on reasonable apprehension. *See* §§ 45-5-201, -202, -206, -210, -211, -213, -220, and -221, MCA. Similarly, whether a defendant may be convicted of mitigated deliberate homicide turns on whether the jury finds that the defendant was "under the influence of extreme mental or emotional stress for which there is a reasonable explanation or excuse" as "determined from the viewpoint of a reasonable person in the actor's situation." Section 45-5-103, MCA. Additionally, a jury must determine the reasonableness of a defendant's belief that force was necessary when a defendant claims the defense of justifiable use of force. Sections 45-3-103 and -104, MCA.

¶29 This Court has recognized that the reasonable person standard is an objective standard, and we have refused to hold statutes unconstitutionally vague simply because they rely on the reasonable person standard. *See Martel*, 273 Mont. at 150, 902 P.2d at 19 (refusing to hold the stalking statute void for vagueness and rejecting the argument that "reasonable apprehension" is vague because it employs a subjective standard); *State v. Campbell*, 219 Mont. 194, 203, 711 P.2d 1357, 1363 (1985), *cert. denied*, 475 U.S. 1127, 106 S. Ct. 1654 (1986) (the term "reasonable apprehension" does not render aggravated assault statute unconstitutionally vague).

¶30 Furthermore, the District Court applied the wrong standard in determining that § 61-7-103, MCA, was unconstitutional. Rather than indulging every possible presumption in an effort to uphold the statute as constitutional, *Stanko*, ¶ 15, the District

Court speculated about hypothetical situations that could potentially render the statute void. The proper inquiry is whether the statute is impermissibly vague in every application, not whether the statute is vague as applied to some, but not all, hypothetical scenarios. *Dixon*, ¶ 18.

¶31 A person challenging a statute as facially void must demonstrate that the statute is vague "in the sense that no standard of conduct is specified at all." *Martel*, 273 Mont. at 151, 902 P.2d at 19. Even Steglich conceded that a person who offered no assistance could be prosecuted under this statute. Hence, we hold that § 61-7-103, MCA, is not impermissibly void on its face.

### *vague as applied*

¶32 When faced with a vague-as-applied challenge to a statute, we determine whether the challenged statute provides a person with actual notice and whether the statute provides minimal guidelines to law enforcement. *Dixon*, ¶ 27. To determine whether the statute provides actual notice, we examine the statute in light of the defendant's conduct to determine if the defendant reasonably could have understood that the statute prohibited such conduct. *Dixon*, ¶ 28.

¶33 In this case, Steglich was involved in a motorcycle accident in which Ryan was fatally injured. The nature of the accident triggered Steglich's statutory duty to render reasonable assistance to Ryan if it was apparent that Ryan required assistance. Steglich told law enforcement officers that Ryan was "gurgling and still alive" but unconscious when he left her. Clearly Ryan required assistance, thus under §§ 61-7-103 and -105, MCA, Steglich was required to provide reasonable assistance to her. The State contends

11

that Steglich's actions, rather than indicating that he was obtaining aid for Ryan, indicate that he was attempting to dispose of evidence and elude law enforcement officers until the effects of alcohol and meth had dissipated.

¶34 In determining that § 61-7-103, MCA, was vague as applied to Steglich, the District Court found that Steglich "could not have reasonably understood that returning to his home in order to obtain help for [Ryan] was prohibited." However, even assuming that Steglich was obtaining aid for Ryan when he walked home, the failure-to-remain statute is not unconstitutionally vague as applied to his actions. An ordinary person would have fair notice that the statute applies to a driver who, after an accident, leaves someone "gurgling and still alive"; walks home past several houses where he could have called 911; gives his keys to his friends to go back to the accident scene while he launders his bloody clothes and takes a shower; and does not call 911 for help or to report the accident until after twenty hours have elapsed.

¶35 Central to the District Court's determination that § 61-7-103, MCA, is vague as applied to Steglich was the court's view that it conflicted with § 61-7-105, MCA. According to the court:

> Nothing in § 61-7-103 says it is ok for the uninjured person to leave the scene as long as he is working to comply with § 61-7-105, it says he cannot leave **in every event** until he has **fulfilled** the requirements of § 61-7-105. Thus, if the uninjured party leaves the scene to procure help because none is available at the scene, the uninjured party has violated § 61-7-103. [Emphasis in original.]

12

Thus, under the court's interpretation, a driver who leaves the scene before satisfying the requirements of the failure-to-remain statute, even if the driver is leaving to comply with the statute, has committed a *per se* violation of the statute.

¶36 Courts have an "obligation to interpret individual statutes within a legislative act so as to ensure that those sections coordinate with each other." *State v. Farmer*, 2008 MT 354, ¶ 13, 346 Mont. 335, 195 P.3d 800. This Court has recognized that "an unreasonable interpretation and dissection of a statute will not render it void for vagueness." *Broers v. Montana Dept. of Revenue*, 237 Mont. 367, 371, 773 P.2d 320, 323 (1989).

¶37 A fair reading of § 61-7-103, MCA, requires a driver who is in an accident that results in injury or death, to remain at the scene until the driver has rendered "reasonable assistance" as set forth in § 61-7-105, MCA. "Reasonable assistance" includes taking an injured person to a hospital or making arrangements to take an injured person to a hospital. Section 61-7-105, MCA. Contrary to the District Court's interpretation, this language does not create an impossibility; rather, it simply recognizes that a person may have to leave the scene to obtain help—i.e., "make arrangements"—for someone who has been injured. Thus, an ordinary person could reasonably understand that the failure-to-remain statute applied to Steglich's actions.

¶38 Furthermore, we noted in *Stanko* that " '[a] vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.' " *Stanko*, ¶ 23 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 92 S. Ct. 2294,

13

2298-99 (1972)). The State points out that § 61-7-103, MCA, is drafted in a manner that avoids arbitrary enforcement. To be charged with violating § 61-7-103, MCA, a person must have driven a vehicle that has been in an accident; someone must have been injured or died as a result of the accident; the driver must have left the scene; and the driver must have failed to provide assistance to an injured person who obviously needed, or requested, assistance. In light of these requirements, law enforcement officers cannot charge individuals on an *ad hoc* basis for failing to remain at the scene of an accident.

¶39 Because § 61-7-103, MCA, provides actual notice to citizens of what conduct is prohibited, and because § 61-7-103, MCA, provides minimal guidelines to ensure that law enforcement officers will not arbitrarily and discriminatorily charge citizens with failing to remain at the scene of an accident that involves injury or death, we hold that this statute is not impermissibly vague as applied to Steglich.

**Conclusion**

¶40 Based on the foregoing, we hold that the District Court erred in concluding that § 61-7-103, MCA, is void for vagueness on its face and as applied to Steglich. Therefore,

¶41 IT IS ORDERED that the State's Petition for Writ of Supervisory Control is GRANTED.

¶42 IT IS FURTHER ORDERED that the District Court's order granting Steglich's motion to dismiss the charge of failure to stop or remain at the scene of an accident is REVERSED. This matter is remanded to the Thirteenth Judicial District Court for further proceedings consistent with this Opinion and Order.

14

¶43   IT IS FURTHER ORDERED that the Clerk of this Court serve a copy of this Opinion and Order upon all counsel of record, and the Hon. Susan P. Watters, District Judge Presiding, under Cause No. DC 2008-360.

DATED this 13th day of May, 2009.

/S/ JAMES C. NELSON

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS